**IN the INTEREST OF M.C., K.G., and K.G., Children**

No. 06–15–00064–CV

Court of Appeals of Texas, Texarkana.

Date Submitted: December 22, 2015

Date Decided: January 11, 2016

Jason A. Duff, Attorney at Law, Greenville, TX, for appellant.

Michael D. Becker, Office of General Counsel, Austin, TX, for appellee.

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Moseley

Jade's continued involvement with drugs, including her use of and dealing in them, which resulted in her incarceration, was the apparent precipitating cause of the termination of Jade's parental rights to her three children, M.C., K.G., and K.L.G.[1] The father of one of the children is deceased, and the parental rights of the fathers of the other two children had previously been terminated.

The trial concerning the termination of Jade's parental rights was a bench trial wherein the trial court ordered termination. Jade has effected this appeal wherein she contends that the evidence is legally and factually insufficient to support the trial court's findings that she committed one or more acts prescribed by statute to justify termination and that termination was in the best interests of the children. *See* Tex. Fam.Code Ann. § 161.001(b)(1)(E), (O), (2) (West Supp.2015). We affirm the trial court's judgment because we find (1) that sufficient evidence supports at least one finding of a statutory ground for termination of Jade's parental rights to the children and (2) that sufficient evidence supports the trial court's finding that termination was in the best interests of the children.

## I. Standard of Review

The United States Supreme Court has acknowledged that the right of a parent to maintain custody of and raise her child "is an interest far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The Texas Supreme Court agrees with this assessment and has held that a parent's interest in maintaining custody of and raising her children is paramount. *In re J.F.C.*, 96 S.W.3d 256, 273 (Tex.2002); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.1985); *In re G.M.*, 596 S.W.2d 846, 846 (Tex.1980). "Because the termination of parental rights implicates fundamental interests, a

---

1. We refer to the children by their initials and to the parent by a fictitious name to protect the privacy of the children. *See* Tex. Fam. Code Ann. § 109.002(d) (West 2014).

higher standard of proof—clear and convincing evidence—is required at trial." *In re A.B.*, 437 S.W.3d 498, 502 (Tex.2014). We, therefore, "engage in an exacting review of the entire record to determine if the evidence is ... sufficient to support the termination of parental rights." *Id.* at 500. Further, "involuntary termination statutes are strictly construed in favor of the parent.'" *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex.App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20). An individual's parental rights to her child may only be terminated if the trial court finds, "by clear and convincing evidence, the existence of both of the following statutory requirements: (1) that the parent has engaged in one of the statutory grounds for termination and (2) that termination is in the child's best interest." *In re C.A.J.*, 459 S.W.3d 175, 178 (Tex.App.—Texarkana 2015, no pet.) (citing Tex. Fam.Code Ann. § 161.001 (West Supp.2015); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex.2012); *In re C.H.*, 89 S.W.3d 17, 23 (Tex.2002)). "Clear and convincing evidence" is that "degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam.Code Ann. § 101.007 (West 2014); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex.2009).

In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven. *E.N.C.*, 384 S.W.3d at 802–03 (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex.2005) (per curiam); *C.A.J.*, 459 S.W.3d at 178. We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted. *E.N.C.*, 384 S.W.3d at 802–03 (citing *J.F.C.*, 96 S.W.3d at 266); *J.P.B.*, 180 S.W.3d at 573; *C.A.J.*, 459 S.W.3d at 179.

In our factual sufficiency review, due consideration is given to evidence the trial court could have reasonably found to be clear and convincing. *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex.2006) (per curiam). We determine "whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the [ ] allegations.'" *Id.* at 108 (second alteration in original) (quoting *C.H.*, 89 S.W.3d at 25). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex.2002). Conversely, if the evidence is such that a reasonable fact-finder could have reasonably resolved any conflicts to form a firm conviction that grounds for termination exist, then the evidence is factually sufficient, and the termination findings must be upheld. *C.H.*, 89 S.W.3d at 18–19; *C.A.J.*, 459 S.W.3d at 179. "[I]n making this determination," we must undertake "'an exacting review of the entire record with a healthy regard for the constitutional interests at stake.'" *A.B.*, 437 S.W.3d at 503 (quoting *C.H.*, 89 S.W.3d at 26). We also recognize that "'the rights of natural parents are not absolute; protection of the child is paramount.... The rights of parenthood are accorded only to those fit to accept the accompanying responsibilities.'" *In re A.V.*, 113 S.W.3d 355, 361 (Tex.2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex.1994) (citation omitted)). The child's

emotional and physical interests will not be sacrificed merely to preserve parental rights. *C.H.*, 89 S.W.3d at 26.

■■■■ "Only one predicate finding under Section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex.App.—Texarkana 2013, pet. denied) (citing *A.V.*, 113 S.W.3d at 362); *In re K.W.*, 335 S.W.3d 767, 769 (Tex.App.—Texarkana 2011, no pet.)); *see In re N.R.*, 101 S.W.3d 771, 775 (Tex. App.—Texarkana 2003, no pet.). If the trial court finds multiple predicate grounds, we will affirm if the evidence supports any one of the grounds. *See C.A.J.*, 459 S.W.3d at 179; *K.W.*, 335 S.W.3d at 769.

## II. The Evidence

At the termination hearing, Jade admitted that she was arrested March 6, 2014 and charged with manufacturing and transporting cocaine. On that same day, M.C., K.G., and K.L.G. were removed from the home by the Texas Department of Family and Protective Services (the Department) because they were in Jade's presence while she was either in possession of or engaged in the sale of illegal drugs. Upon removal, the children were placed in the temporary managing conservatorship of the Department. After an adversary hearing, the trial court entered orders on March 24, 2014, which required Jade, in Phase I, to submit to a drug and alcohol dependency assessment and follow all recommendations of the assessment, to participate in either an Alcoholics Anonymous/Narcotics Anonymous (AA/NA) or a Celebrate Recovery program not less than three hours per week and provide the Department with proof of attendance, and to successfully complete an intensive outpatient program (IOP) and a supportive out-patient program (SOP). The court also ordered Jade, in Phase II, to attend counseling sessions until the counselor determined that no further sessions were necessary, to successfully complete parenting classes, and to successfully complete an anger management program. Finally, the court ordered Jade, on an ongoing basis, to submit to drug testing when requested by the Department, to abstain from drug or alcohol use during the pendency of the suit, to maintain stable, safe, and appropriate housing, to refrain from engaging in any criminal activity, and to comply with each requirement of the Department's service plan.

At the final hearing, Jade claimed that she participated in NA meetings twice a week and in AA meetings a couple of times, but could not recall how many meetings she attended. However, Morgan Shields, who oversaw Jade's case for the Department, testified that the attendance sheets provided by Jade showed that she had failed to attend meetings on many occasions and had not attended them either regularly or as often as she claimed. Jade also claimed that she completed the IOP in July 2014 and the SOP in September 2014 at the Mental Health and Mental Retardation Clinic (MHMR) in Terrell. She denied that MHMR withdrew her certificates of completion of the IOP/SOP, but also testified that she completed another IOP in February 2015 at a rehabilitation facility. Marti Koenig, a licensed professional counselor with Lakes Regional MHMR in Terrell testified that Jade had completed the IOP in July 2014 and had completed the required number of sessions for the SOP in September 2014. However, Koenig rescinded Jade's SOP completion certificate upon being informed that Jade had admitted to continuing her use of drugs and stated that she had informed Jade by telephone of the rescission. Koe-

nig also testified that Jade had applied to be admitted to an SOP in March 2015, but only attended one group session. Although Jade also claimed that she completed the counseling and anger management requirements with Koenig at MHMR, Koenig testified that neither she nor MHMR conduct individual counseling or anger management programs, so Jade could not have completed those requirements with her. Jade admitted that she had not completed the parenting classes, but explained that she had been told she could not attend those until she completed other requirements in the service plan. Shields confirmed that Jade had tried to commence parenting classes before she completed the IOP/SOP, but that she had told Jade she could not take the parenting classes until she had successfully completed the Phase I requirements. Shields also testified that Jade had failed to refrain from criminal activity during the pendency of the case, noting that she had been arrested twice during this time period, including one arrest wherein she was charged with driving while intoxicated (DWI).

Jade's drug and alcohol use continued unabated for much of the pendency of the case. She admitted that in June 2014, she was arrested for DWI in Kaufman County. This charge was dropped to obstruction of a highway, and Jade received deferred adjudication community supervision in November 2014. Jade also admitted at trial that (as she was required to do by the trial court's order) she submitted to a hair follicle test on August 22, 2014, and that her hair tested positive for the use of both PCP and marihuana. She also testified that she pled no contest to the manufacturing and transporting cocaine charges in Hunt County in November 2014, a circumstance that resulted in her being placed on deferred adjudication community supervision for five years, being ordered to perform conditions of community supervision,

being required to pay a fine, and being placed in a treatment facility. She also acknowledged that she had signed an admission that on January 4, 2015, she had used cocaine, alcohol, PCP, and Xanax. However, she explained that she had been ordered to go to a treatment facility, but that she could not get into one without failing a drug test, so she used marihuana to get into a rehabilitation facility. She was able to get into a rehabilitation facility in late January and was released from it February 10 or 11. Jade admitted—despite her stay in the rehabilitation facility—that she again used PCP on March 14, 2015, and marihuana on February 28, 2015. In addition, Jade testified that although she was depressed after her children were removed, she was unable to obtain a prescription for medication. So, in August 2014, she acted like she was going to commit suicide, and the police took her to Terrell State Hospital, where she was diagnosed with depression and given a prescription for Prozac and hydroxyzine, which she continued to use until March 2015. Upon examination by the trial court, Jade admitted that she had continued the use of illegal substances during the pendency of the suit. She also admitted that she sold drugs before the case began, including cocaine, marihuana, and embalming fluid.

Jade also testified that by the time she was released from the rehabilitation facility, a motion to revoke her Hunt County deferred adjudication community supervision had been filed. On June 8, 2015, the conditions of her deferred adjudication community supervision in Hunt County were amended, and she was ordered confined in a Substance Abuse Felony Punishment (SAFP) facility for a period of not less than ninety days or more than one year. The order also provided that Jade be detained in the Hunt County Jail until

she was transferred to the SAFP facility. Jade testified that she was to be transferred to the SAFP facility at the conclusion of the final hearing and that she anticipated being incarcerated for at least five more months.

Jade claimed that in the IOP/SOP classes, she learned that she is an addict and makes wrong choices in her friends. She also admitted that although she had spent over fifty hours in IOP, she still used drugs. She testified that she believes, however, that SAFP will help her break the cycle before it gets started. She also testified that she attends the NA, Overcomers, Celebrate Recovery, and church meetings that are offered in the jail. She claimed that NA has helped her with her cognitive behavior and making the right choices. She has also learned about the impact drugs have on her family and children. She said she believes that the SAFP facility will help her to be a better mother by keeping her and her children away from drugs and the drug lifestyle and by providing parenting life skills classes. She indicated that her plan was to live at her mother's house in Kaufman and work as a certified nurse assistant when released from the SAFP facility, saying, further, that her mother would assist in taking care of the children. Jade asked the trial court not to terminate her parental rights, stating that she would prefer to have the ability to regain her children in a year or two, or at least have the authority to see them.

Shields testified that the children have resided with Jade's maternal great uncle, V.G., since June 18, 2014. Shields sees them once or twice a month, and she said that they are doing wonderfully, and are happy to be living with V.G., believing themselves to be safe and without worry. She reported that M.C. and K.G. are in school, are doing well and are excited to be going to school and that even though K.G. has experienced some medical problems, V.G. has arranged for the child to be seen by an ear, nose, and throat specialist to address those problems. In her opinion, V.G. provides a stable home environment. Shields also opined that although Jade loves (and is loved by) the children, the visits between them appear to be chaotic and disorganized and that Jade seems simply unable to manage all three of the children. Shields expressed her opinion that Jade (who has remained unemployed during the entire pendency of the case and is currently incarcerated) lacked the ability to meet the physical and emotional needs of the children. Shields, citing the threats made by Jade before she was admitted to the psychiatric facility to harm herself and others, expressed her fears that Jade might do harm to care providers involved with her children if she thought it might interfere with her being able to raise the children. In Shield's opinion, nothing Jade had done during the eighteen months of the case indicated that she had made a change in or stopped her use of drugs and that drug use impaired her ability to properly parent her children or to satisfy their needs.

Jan Miller has been a Court–Appointed Special Advocate (CASA) volunteer for thirteen years and was the CASA volunteer for the children. She testified that there has been a change in the children since the case began and that they are now happy, better disciplined, doing well in school, and receiving good medical treatment since they were taken in by V.G. In contrast to the children's life with V.G., Miller had observed two visitations between Jade and the children, visitations she described as being wild and chaotic. She also testified that she is concerned about the children being returned to Jade because of her continued use of drugs and repetitive incarcerations. She testified

that she has spoken to the children and that M.C. is the only one who has asked about his mother or said he wanted to go home with his mother. She said that K.L.G. is three years old and just wants to play and that K.G. likes where he is and is very happy. Miller opined that Jade could not provide for the emotional and physical needs of the children. She explained that Jade is too involved in her other activities to take care of the children and put them first. Miller said that she believed the children would be in physical or emotional danger if they were returned to Jade due to her past suicidal tendencies, her propensity to use drugs, her history of repeated incarcerations, and her demonstrated lack of parenting abilities. She compared the children's prior life to their current situation in living with V.G., who she indicates has demonstrated parenting ability. She testified that V.G. appears to love the children as if they were his own and that the children respect and obey him. She agrees with the Department's plan for adoption of the children by V.G. because of the permanency this would provide to the children.

Jade's mother, S.N., testified that she would permit Jade to live with her after she is released from incarceration, but only if she eschews her use of drugs. She testified that she believes Jade to be a good mother whom the children love. She sees a change in Jade's attitude, believes she is more respectful now, and believes Jade comprehends the consequences of her actions.

V.G. testified that he is the great uncle of the children and their current caregiver. He expressed his desire to keep caring for the children and assured the court that he would protect them. He stated that he would not let Jade see the children if she was not acting in their best interests, but would allow her to see them if she straightened up. He testified that Jade loves her children and is a good mother, but that she is a little selfish and that her use of drugs has jeopardized the children. V.G. described something of a Jekyll and Hyde situation in that when she is not using drugs, she is a sweet, responsible, and outgoing person, but when Jade is using drugs, she is in another world and does not care about anyone else's feelings. V.G. testified that he has helped take care of the children all of their lives. Although he hoped that Jade would turn her life around in the SAFP facility, he acknowledged that she may not, that the children should not be forced to wait for their mother to straighten out, and that they needed protection. He testified that if Jade's parental rights to the children were terminated, he would like to pursue their adoption. V.G. also related the current activities of the children, all of which sounded beneficial to them, and opined that their conditions had improved since they had come to live with him. He testified that they are comfortable in the home and with him, and he asked the court to let them stay in his home.

After hearing the evidence, the trial court found that the Department had proven grounds for termination under Section 161.001(b)(1), subsections (E) and (O) of the Texas Family Code and that termination was in the best interests of the children and ordered the termination of Jade's parental rights.

## III. Analysis

Jade argues that the evidence is legally and factually insufficient to support the trial court's termination of her parental rights. She attacks the legal and factual sufficiency of the evidence to support both of the predicate findings and the best-interest finding. Although we may affirm if the evidence supports only one predicate

finding, we will examine both the predicate findings of the trial court.

## A. Sufficient Evidence Supports the Trial Court's Finding Under Section 161.001(b)(1)(E)

A person's parental rights may be terminated under subsection E if the parent "has .... engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct which endangers the physical or emotional well-being of the child[ren]." TEX. FAM.CODE ANN. § 161.001(b)(1)(E). Endanger "means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment." *E.N.C.*, 384 S.W.3d at 803. It "'means to expose to loss or injury.'" *In re N.S.G.*, 235 S.W.3d 358, 367 (Tex.App.—Texarkana 2007, no pet.) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987)). Subsection E "'refers only to the parent's conduct, as evidenced not only by the parent's acts, but also by the parent's omissions or failures to act.'" *Id.* at 366–67 (quoting *In re S.K.*, 198 S.W.3d 899, 902 (Tex.App.—Dallas 2006, pet. denied)). "'The conduct to be examined includes what the parent did both before and after the child was born.'" *Id.* at 367 (quoting *S.K.*, 198 S.W.3d at 902); *see E.N.C.*, 384 S.W.3d at 804–05. "'To be relevant, the conduct does not have to have been directed at the child, nor must actual harm result to the child from the conduct.'" *In re Z.M.*, 456 S.W.3d 677, 686 (Tex.App.—Texarkana 2015, no pet.) (quoting *Perez v. Tex. Dep't of Protective & Regulatory Servs.*, 148 S.W.3d 427, 436 (Tex.App.—El Paso 2004, no pet.)); *see E.N.C.*, 384 S.W.3d at 803; *N.S.G.*, 235 S.W.3d at 367. Rather, "[u]nder subsection (E), it is sufficient that the child's well-being is jeopardized or exposed to loss or injury." *In re L.E.S.*, 471 S.W.3d 915, 923 (Tex.App.—Texarkana 2015, no pet.) (citing *Boyd*, 727

S.W.2d at 533; *N.S.G.*, 235 S.W.3d at 367). "Further, termination under subsection (E) must be based on more than a single act or omission. Instead, a 'voluntary, deliberate, and conscious course of conduct by the parent is required.'" *Id.* (quoting *Perez*, 148 S.W.3d at 436).

"'Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under section 161.001(1)(E) [ (now § 161.001(b)(1)(E)) ].'" *In re A.L.*, 06–14–00050–CV, 2014 WL 5204888, at *7 (Tex. App.—Texarkana Oct. 8, 2014, no pet.) (mem.op.) (quoting *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex.App.—Houston [1st Dist.] 2009, pet. denied)). "'Drug use and its effect on a parent's life and his ability to parent may establish an endangering course of conduct.'" *In re J.L.B.*, 349 S.W.3d 836, 848 (Tex.App.—Texarkana 2011, no pet.) (quoting *N.S.G.*, 235 S.W.3d at 368); *see J.O.A.*, 283 S.W.3d at 345 n.4 ("'Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child.'") (quoting *In re S.N.*, 272 S.W.3d 45, 52 (Tex.App.—Waco 2008, no pet.)). In addition,

> [w]hile we recognize that imprisonment, standing alone, is not conduct which endangers the physical or emotional well-being of the child, "intentional criminal activity which expose[s] the parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well-being of the child."

*L.E.S.*, 471 S.W.3d at 924 (quoting *In re AWT*, 61 S.W.3d 87, 89 (Tex.App.—Amarillo 2001, no pet.) (per curiam) (citing *Allred v. Harris Cnty. Child Welfare Unit*,

615 S.W.2d 803, 806 (Tex.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.))).

 This case began as a result of Jade's use or sale of illegal drugs in the presence of her children. At the same time her children were removed, Jade was arrested for manufacturing and transporting cocaine, for which she received deferred adjudication community supervision. Jade admitted at trial that before this case was opened, she had also sold marihuana and embalming fluid. Despite her repeated arrests, the removal of her children, and her participation in drug treatment programs, Jade continued to use illegal drugs (including cocaine, PCP, and marihuana) and to engage in other intentional criminal activity that exposed her to incarceration. As a result of her intentional criminal conduct after this case began, she had been incarcerated for at least three months before the final hearing and would very likely remain incarcerated for at least three more months. This conscious and deliberate course of conduct exposed the children to a parent whose impaired judgment exposed them to loss or injury and to the loss of a stable home environment as a result of the possibility of repeated incarcerations. We find that this evidence is legally and factually sufficient to support the trial court's finding under subsection E, and we overrule this point of error.

**B. Sufficient Evidence Supports the Trial Court's Finding Under Section 161.001(b)(1)(O)**

Under Section 161.001(b)(1)(O) of the Texas Family Code, parental rights may be terminated if the parent has

failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child[ren] who ha[ve] been in the permanent or temporary managing conservatorship of the

Department of Family and Protective Services for not less than nine months as a result of the child[ren]'s removal from the parent under Chapter 262 for the abuse or neglect of the child....

TEX. FAM.CODE ANN.§ 161.001(b)(1)(O).

 Jade does not dispute that the children were removed from her due to abuse or neglect under Chapter 262 of the Family Code or that the children have been in the temporary managing conservatorship of the Department for not less than nine months. Neither does she dispute the evidence showing that she has completed very few of the actions ordered by the trial court that were necessary for the return of her children. Rather, Jade argues that the Department failed to provide evidence of an order that specifically established the actions necessary for the return of the children. She also argues that no order which had been entered in her case stated a date by which the actions were to be performed; accordingly, she maintains that there is no evidence of her failure to comply with the trial court's order.

The Department offered into evidence the trial court's temporary order, which, as seen above, set forth the specific actions required of Jade. Further, immediately before the specific actions set forth in the court's order is the following warning:

THE COURT FINDS AND HEREBY NOTIFIES THE PARENTS THAT EACH OF THE ACTIONS REQUIRED OF THEM BELOW ARE NECESSARY TO OBTAIN THE RETURN OF THE CHILDREN, AND FAILURE TO FULLY COMPLY WITH THESE ORDERS MAY RESULT IN THE RESTRICTION OR TERMINATION OF PARENTAL RIGHTS.

Thus, the temporary orders introduced into evidence set forth the specific actions required of Jade, notified her that her full compliance was necessary to obtain the return of her children, and warned that her failure to fully comply may result in the termination of her parental rights. Therefore, the temporary orders "specifically established the actions necessary for the parent to obtain the return of the child[ren]," as required by subsection O. See TEX. FAM.CODE ANN. § 161.001(b)(1)(O).

Jade argues that the Department was required to provide some evidence that the service plan incorporated in the trial court's order specifically established the actions necessary for the return of the children, citing *In re D.N.*, 405 S.W.3d 863, 878 (Tex.App.—Amarillo 2013, no pet.). However, the circumstances in *D.N.* do not match the situation in this case because in the case cited by Jade, neither the Department's service plan nor any court order setting forth the mother's required actions were introduced into evidence. *Id.* Further, the testimony regarding the requirements was vague, at best. *Id.* at 876–77. Based on that record, the reviewing court concluded that there was neither any evidence that clearly and convincingly specified the duties imposed on the mother by informing her what she was supposed to do in order to fully comply, nor any evidence that set out what actions she took (or failed to take) that caused her to be considered not in compliance. *Id.* at 878.

In this case, however, the court order specifically sets forth the actions which were required to be taken by Jade, and the evidence fully, clearly, and convincingly shows the means by which she failed to comply. Jade was required to participate in either the AA/NA or Celebrate Recovery programs at least three hours each week, yet, the testimony showed that Jade's attendance at any such session was inconsistent at best, and at no point did she attend any of these programs at least three hours per week. She was required to successfully complete both IOP and SOP, but only successfully completed IOP. The testimony also showed that during the eighteen months that this case was pending before the final hearing, Jade did not attend the required counseling and did not successfully complete either the parenting classes or an anger management program, as required by the order. Finally, the testimony (including Jade's own admissions) showed that she continued to use illicit drugs, consume alcohol, and engage in criminal activity, all in violation of the court's order. We find that this evidence is legally and factually sufficient to support termination under subsection O. See TEX. FAM.CODE ANN. § 161.001(b)(1)(O); *O.R.F.*, 417 S.W.3d at 38–39.

Jade also argues that since the order does not state the specific dates by which she was required to complete each action that was ordered, noncompliance cannot be shown. Jade does not cite any authority for this contention. See TEX.R.APP. P. 38.1(i). The Department refers us to the recent decision of the Corpus Christi Court of Appeals rejecting a similar argument. See *In re B.S.*, No. 13–15–00281–CV, 2015 WL 7023917, at *2–3 (Tex.App.—Corpus Christi Nov. 12, 2015, no pet. h.) (mem.op.). In this case, we note first that several of the actions under the order were required on an ongoing basis (including the abstention from the use of drugs or alcohol and from criminal activity during the pendency of the action). The evidence clearly showed that Jade repeatedly used illegal drugs and alcohol and engaged in criminal activity, plainly in violation of the order. Further, Jade, in response to the trial court's questions, acknowledged that her attorneys had explained to her that the case had to be resolved within, at most, eighteen months. Even though the final

hearing took place within days of that deadline, the evidence showed that Jade had completed very few of the order's other required actions. We find that under this record, Jade's argument is without merit.

We overrule this point of error.

## C. Sufficient Evidence Supports the Trial Court's Best–Interest Finding

In considering whether termination is in the best interest of the child, "there is a strong presumption that the best interest of the child is served by keeping the child with a parent." *In re R.R.*, 209 S.W.3d 112, 116 (Tex.2006) (per curiam). "Termination 'can never be justified without the most solid and substantial reasons.'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex.App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex.1976)). Even if a parent's behavior "'may reasonably suggest that a child would be better off with a new family, the best interest standard does not permit termination merely because a child might be better off living elsewhere.'" *In re A.H.*, 414 S.W.3d 802, 807 (Tex.App.—San Antonio 2013, no pet.) (quoting *In re W.C.*, 98 S.W.3d 753, 766 (Tex.App.—Fort Worth 2003, no pet.)).

In determining the best interests of the child, courts consider the following *Holley* factors:

(1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper

one, and (9) any excuse for the acts or omissions of the parent.

*N.L.D.*, 412 S.W.3d at 819 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see E.N.C.*, 384 S.W.3d at 807; *see also* Tex. Fam.Code Ann. § 263.307(b) (West Supp.2015). It is not necessary to prove all of these factors as a condition precedent to parental-rights termination. *C.H.*, 89 S.W.3d at 27; *N.L.D.*, 412 S.W.3d at 819. Evidence relating to a single factor may suffice in a particular situation to support a finding that termination is in the best interests of the child. *In re K.S.*, 420 S.W.3d 852, 855 (Tex.App.—Texarkana 2014, no pet.) (citing *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex.App.—Waco 2001, no pet.)). When considering the child's best interest, we may take into account that a parent is unable to provide adequate care for a child, lacks parenting skills, or exercises poor judgment. *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex.App.—Fort Worth 2003, no pet.). Parental drug abuse, which reflects poor judgment, is also a factor that may be considered when determining the child's best interest. *In re M.R.*, 243 S.W.3d 807, 820 (Tex.App.—Fort Worth 2007, no pet.). Further, the amount of contact between the parent and child and the parent's failure to provide financial and emotional support, continuing criminal history, and past performance as a parent are all relevant in determining the child's best interest. *See C.H.*, 89 S.W.3d at 28. We will only address those factors set forth in *Holley* for which there is relevant evidence. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976).

It is undisputed that the children love their mother and that she returns this love. Further, the CASA volunteer, Miller, testified that M.C. had at one time expressed that it was his desire to return to a home with his mother, although it is unclear when this statement was made. There was no testimony regarding the de-

sires of the other children. Therefore, this factor is neutral.

The testimony showed that the physical and emotional needs of the children were being met by their relative placement, and it is believed that these needs will continue to be met in the future. The testimony also showed that V.G. was providing the children with a safe and stable home environment. In contrast, the evidence showed that because of Jade's past and continued drug use and her past drug dealing, coupled with her intermittent and continued incarceration, the children's emotional needs were not being met and that they were physically and emotionally endangered at the time of removal. Because of her continued drug use, her then current incarceration, and the possibility of future incarcerations, several witnesses expressed concern regarding the physical and emotional safety of the children should they be returned to Jade's custody. Further, the evidence showed that although Jade had been employed in the past, she had remained unemployed for the pendency of this case. Even though Jade sought to assure the trial court that she had changed and would make good decisions for the children in the future, most witnesses were not confident that this was the case. The sword of authority was rattled in the scabbard when the case was filed and the children were removed from her. A trial court, as fact-finder, could reasonably infer that based on her actions since the case began, the threat of the permanent loss of her children was plainly expressed. Accordingly, Jade (unable or unwilling to comply with the temporary orders issued by the court in order to demonstrate her ability to alter her behavior) would be unable to meet the physical and emotional needs of the children and that her current conduct would endanger their emotional and physical well-being. The second and third *Holley* factors weigh heavily in favor of termination.

Shields and Miller both testified that V.G. is an able and caring caregiver that is involved in meeting the children's emotional, medical, educational, and social needs. They testified that he properly disciplines the children and that they respect and obey him. Although several of Jade's witnesses testified that she had been a good mother before she began using drugs, all of them agreed that her decision to use drugs had been detrimental to the children. In addition, Shields and Miller expressed concerns regarding Jade's parenting skills, based on their observations during her visits with the children. Further, although this case had been pending for eighteen months, Jade had not taken the steps necessary to complete parenting classes. The fourth *Holley* weighs in favor of termination.

Jade testified that she planned to complete SAFP, along with parenting and life skills classes. When she completed these, she planned to stay with her mother and begin working as a certified nursing assistant. In a year or two, she hoped to be able to have the children returned to her. Although other witnesses were hopeful that Jade would be able to complete her plan, they acknowledged that there was also a possibility that she would return to using drugs. The Department put on evidence that after termination, its plan was for the children to be adopted by V.G. V.G. also expressed his desire to adopt the children if the court terminated Jade's parental rights. V.G. recognized the value of the relationship between Jade and the children and planned to allow Jade to have contact with the children as long as she maintained sobriety and acted in their best interests. Shields and Miller testified that having the children remain with V.G. would provide them with a stable home environment. In contrast, Jade had not demonstrated her ability to provide a stable home during the pendency of the case.

The sixth and seventh *Holley* factors also weigh heavily in favor of termination.

Finally, Jade's drug dealing or use of illegal drugs in the presence of the children was the precipitating event in the removal of the children. In spite of this, Jade continued to use drugs, even after completing IOP and taking the SOP sessions. Although she testified that she only used drugs again to gain admission to a rehabilitation facility, this does not explain her admitted drug use after completing her treatment at the rehabilitation facility. Jade's continued use of drugs even when she had been specifically warned that it might result in termination of her parental rights shows her lack of good judgment and an inability to act in the best interests of the children. The eighth and ninth factors also weigh heavily in favor of termination.

We find that there is sufficient evidence to support the trial court's finding that termination is in the best interests of M.C., K.G., and K.L.G., and we overrule this point of error.

We affirm the judgment of the trial court.