

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-25-00003-CV

---

IN THE INTEREST OF Z.K.L., A CHILD

---

On Appeal from the County Court at Law No. 2
Gregg County, Texas
Trial Court No. 2023-1096-CCL2

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

The Department of Family and Protective Services filed a petition to terminate Mother's parental rights to her son, Zach.[1]  Following a bench trial, the trial court terminated Mother's parental rights after finding that (1) she knowingly placed or allowed Zach to remain in conditions or surroundings that endangered his physical or emotional well-being, (2) she engaged in conduct or knowingly placed Zach with persons who engaged in conduct that endangered his physical or emotional well-being, (3) she constructively abandoned Zach, (4) she failed to comply with the provisions of a court order that specifically established the actions necessary to obtain Zach's return, as described in Section 161.001(b)(1)(O) of the Texas Family Code, (5) she used a controlled substance and failed to either complete a substance abuse treatment program or used drugs after completing the program, as described in Section 161.001(b)(1)(P) of the Texas Family Code, and (6) termination of her parental rights was in the child's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (P), (b)(2) (Supp.).

On appeal, pursuant to a recent amendment to Section 161.001 of the Texas Family Code, Mother argues that the Department failed to make reasonable efforts to return Zach to her. Mother also argues that the evidence is legally and factually insufficient to support the trial court's statutory finding under Ground P and challenges the trial court's best interests finding.

We find that the recent amendment to Section 161.001, which is the basis of Mother's first point or error on appeal, does not apply to Mother's case.  We also find that Mother has

---

[1]We use pseudonyms to protect the identity of the child.  *See* TEX. R. APP. P. 9.8.

failed to challenge the trial court's finding under Grounds D and E and that those unchallenged grounds support the trial court's termination of Mother's parental rights to Zach. Lastly, we conclude that the trial court's best-interest finding is supported by legally and factually sufficient evidence. Accordingly, we affirm the trial court's judgment.

## I.  Factual and Procedural Background

Zach was born on June 27, 2023. At trial, Kelsey Drennan, an investigation supervisor for Child Protective Services in Gregg County, testified that the Department received a report the day after the child was born that Mother and Zach both tested positive for amphetamine at the hospital. Drennan said the report indicated that Mother was homeless and had no plan following discharge from the hospital. According to Drennan, Mother admitted to using methamphetamine daily, including during her pregnancy, and to using marihuana occasionally. Mother also confirmed that she was homeless, that Zach's father also used methamphetamine, and that she had no plans as to where the child would live. As a result of the investigation, the Department filed its original petition on June 30, 2023.

Brandie Horton, a caseworker for the Department, testified that the Department placed Zach with Mother's first cousin, Mandy, and her husband, Keith. Horton said that the Department created several family service plans for Mother, which the trial court ordered her to complete. According to Horton, Mother's family service plan required her to complete a psychological examination, parenting class, individual counseling, a drug and alcohol assessment, and random drug testing. The trial court also ordered Mother to provide safe and

3

stable housing for Zach, refrain from criminal activity, and obtain sufficient financial support for herself and the child.

Horton testified that Mother only completed a psychological evaluation before becoming incarcerated on July 6, 2023, in the Gregg County Jail. According to Horton, Mother was released from jail on October 8, 2023, but was jailed again on October 20. Although she was released on November 27, Mother was arrested again on December 6 on a charge of possession of a controlled substance and remained in jail through the date of trial. Horton testified that, despite Mother's incarceration, she kept in regular contact with her. Even so, Horton said that Mother was unable to complete the family service plan because no services were available to her in the Gregg County Jail.

Horton testified that it was unknown when Mother's incarceration might end and that, as a result, Mother was not able to see Zach and had lost any meaningful contact with the child, although she cared about him. Horton testified that Zach had been placed with Mandy and Keith, that their home was safe and appropriate, and that they adequately provided for the child's needs. According to Horton, Zach was strongly bonded to Mandy and Keith, was thriving, and had no health issues. Horton testified that Mandy and Keith, who had no children of their own, wished to adopt the child. Julie Kirkland, a Court Appointed Special Advocate, testified that she had observed Zach in his placement with Mandy and Keith and echoed Horton's testimony that they provided for Zach's needs and that the child was bonded to them and was thriving.

Horton believed that Zach could not be safely returned to Mother, and both Horton and Kirkland testified that termination of Mother's parental rights was in Zach's best interests.

4

Mandy testified that Zach had been placed with her since he was thirteen days old and that he had not seen Mother since then. Mandy affirmed that she had the means to financially support Zach because she was a property manager and bookkeeper, and her husband was a truck driver that owned his own business. Mandy testified that she and Keith were willing to provide a safe and loving home for Zach and wished to adopt him.

Mother testified that she loved Zach and wanted to have a relationship with him. She admitted to having a drug problem and said she used methamphetamine on the day before Zach was born. Mother testified that she was serious about resolving any substance abuse issues and said she had been accepted into several rehabilitation programs, including Serenity Star Ranch, Rock Bottom Ranch, Redemption Walk, Wiseman Ministries, and House of New Beginnings. When asked if she was able to take better care of Zach in comparison to the day he was born, Mother responded, "I don't know." When asked when she was getting out of jail, Mother responded that she did not yet have a court date.

Mother testified that there were no services available to her while she was in the Gregg County Jail. Even so, Mother said she had completed a quarter of a parenting workbook that her mother ordered for her. Mother said she had also completed Bible study courses and "recently started an educational course in the mail where [she] completed how to become like a food handler." Mother's plan was to obtain a food-handler license that could assist her in securing employment on her release from jail.

5

Mother admitted that she did not have a home to live in with Zach. Mother wished for Zach to remain with Mandy and Keith but also asked to become a possessory conservator of the child.

After hearing the evidence, the trial court terminated Mother's parental rights.

## II. Mother's First Complaint Is Based on a Legislative Amendment that Does Not Apply

The Department is required to show that it made reasonable efforts to return the child to the parent under Ground N, known as the constructive abandonment ground. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N). In 2023, the Legislature amended Section 161.001 to expand the reasonable effort requirement to other grounds, as seen by the following language:

> (f)     In a suit for termination of the parent-child relationship filed by the Department of Family and Protective Services, the court may not order termination of the parent-child relationship under Subsection (b)(1) unless the court finds by clear and convincing evidence and describes in writing with specificity in a separate section of the order that:
>
> > (1)     the department made reasonable efforts to return the child to the parent before commencement of a trial on the merits and despite those reasonable efforts, a continuing danger remains in the home that prevents the return of the child to the parent; or
> >
> > (2)     reasonable efforts to return the child to the parent, including the requirement for the department to provide a family service plan to the parent, have been waived under Section 262.2015.

TEX. FAM. CODE ANN. § 161.001(f) (Supp.). Based on this recent amendment, Mother argues in her first point of error that the evidence is insufficient to show that the Department made reasonable efforts to return Zach to her.

6

The newly enacted Section 161.001(f) only applies to suits filed on or after September 1, 2023.  Act of May 25, 2023, 88th Leg., R.S., ch. 675, §§ 1, 7–8, 2023 Tex. Sess. Law Serv. 1646, 1646, 1647 (codified at TEX. FAM. CODE § 161.001(f)).  Here, the Department's original petition was filed on June 30, 2023.  Because we apply the law in effect on the date that the Department filed suit, Section 161.001(f) does not apply to this case.  *See In re E.C.-L.H.-D.*, No. 07-24-00190-CV, 2024 WL 4692126, at *4 (Tex. App.—Amarillo Nov. 5, 2024, pets. denied) (mem. op.); *In re J.S.*, 687 S.W.3d 541, 546 n.3 (Tex. App.—Eastland 2024, no pet.); *In re Z.E.C.*, No. 08-23-00282-CV, 2024 WL 779616, at *9 (Tex. App.—El Paso Feb. 26, 2024, no pet.) (mem. op.).  Accordingly, we overrule Mother's first point of error.

### III.    Unchallenged Grounds Supports the Trial Court's Termination of Mother's Parental Rights

In her second point of error, Mother argues that the evidence is legally and factually insufficient to support the trial court's finding under Ground P.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(P).  We also find that Mother's arguments can be liberally read to include a challenge to the Grounds N and O findings.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O).  Even so, Mother has failed to raise any challenge to the trial court's Grounds D or E findings.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E).

"In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest."  *In re E.J.Z.*, 547 S.W.3d 339, 343 (Tex. App.—Texarkana 2018, no pet.) (citing TEX. FAM. CODE ANN. § 161.001; *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012)).  We have previously explained that "[o]nly one predicate finding under

7

Section 161.001[b](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re L.E.S.*, 471 S.W.3d 915, 923 (Tex. App.—Texarkana 2015, no pet.) (quoting *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied)); *see In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).[2] Because the Grounds D and E findings are unchallenged and support the trial court's finding that statutory grounds existed to terminate Mother's parental rights, we overrule Mother's second point of error.

## IV. Sufficient Evidence Supports the Trial Court's Best-Interest Finding

In her last point of error, Mother argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights was in the child's best interests. After reviewing the record, we disagree.

### A. Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *In re E.J.Z.*, 547 S.W.3d at 343 (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014)). "This Court is . . . required to 'engage in an exacting review

---

[2]Had Mother challenged the trial court's findings under Grounds D or E, due process would demand that we review at least one of those grounds. *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) (per curiam). However, Mother did not challenge either ground.

of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights.'" *Id.* (quoting *In re A.B.*, 437 S.W.3d at 500). "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *Id.* (alteration in original) (quoting *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied)).

"'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id.* (quoting TEX. FAM. CODE ANN. § 101.007) (citing *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009)). "This standard of proof necessarily affects our review of the evidence." *Id.*

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction" on the best-interest ground. *In re L.E.S.*, 471 S.W.3d at 920 (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *In re J.P.B.*, 180 S.W.3d at 573).

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine '"whether the evidence is

9

such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations.”’” *Id.* (alteration in original) (quoting *In re H.R.M.*, 209 S.W.3d at 108). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266). "‘[I]n making this determination,’ we must undertake ‘“an exacting review of the entire record with a healthy regard for the constitutional interests at stake.”’” *Id.* (alteration in original) (quoting *In re A.B.*, 437 S.W.3d at 503). "We also recognize that the trial court, as the fact-finder, is the sole arbiter of a witness’ demeanor and credibility, and it may believe all, part, or none of a witness’ testimony." *In re A.M.*, No. 06-18-00012-CV, 2018 WL 3077784, at *3 (Tex. App.—Texarkana June 22, 2018, pet. denied) (mem. op.) (citing *In re H.R.M.*, 209 S.W.3d at 109). "When, as in this case, ‘findings of fact and conclusions of law are not properly requested and none are filed, the trial court’s judgment implies all findings of fact necessary to support it.’” *In re B.B.*, No. 06-24-00047-CV, 2024 WL 4448690, at *2 (Tex. App.—Texarkana Oct. 9, 2024, no pet.) (mem. op.) (quoting *In re Z.E.*, No. 05-22-01337-CV, 2023 WL 3595627, at *5 (Tex. App.—Dallas May 23, 2023, pet. denied) (mem. op.) (citing *Shields Ltd. P’ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017)).

"There is a strong presumption that keeping a child with a parent is in the child’s best interest." *In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *7 (Tex. App.—Corpus Christi–Edinburg Feb. 28, 2013, pet. denied) (mem. op.) (citing *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam)). "Termination ‘“can never be justified without the most solid and

substantial reasons.'"" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, '"the rights of natural parents are not absolute; protection of the child is paramount."'" *In re L.E.S.*, 471 S.W.3d at 920 (quoting *In re A.V.*, 113 S.W.3d at 361) (citing *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003)). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002))).

> In determining the best interests of the child, courts consider the following *Holley* factors:
>
> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*In re N.L.D.*, 412 S.W.3d at 819 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *see also* TEX. FAM. CODE ANN. § 263.307(b). The Department is not required to present proof of each *Holley* factor. *In re M.C.*, 482 S.W.3d 675, 688 (Tex. App.—Texarkana 2016, pet. denied) (citing *In re C.H.*, 89 S.W.3d at 27). In other words, the absence of evidence regarding "some of these factors does not preclude a best interest finding, particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no

11

pet.) (quoting *In re A.E.*, No. 05-14-01340-CV, 2015 WL 1184179, at *6 (Tex. App.—Dallas Mar. 16, 2015, pet. denied) (mem. op.).

**B.      Analysis of the *Holley* Factors**

As for the first factor, Zach was a baby and was too young to speak his desires.  Even so, the record shows that Zach had been in Mandy and Keith's care since he was thirteen days old, that Mother had not seen him since, and that Zach had bonded with Mandy and Keith.  As a result, the first *Holley* factor weighs against Mother.  *See In re K.O.*, 488 S.W.3d 829, 840 (Tex. App.—Texarkana 2016, pet. denied).

As for the next three factors, we consider "that a parent is unable to provide adequate care for a child, lacks parenting skills, or exercises poor judgment."  *In re M.C.*, 482 S.W.3d at 688.  "Parental drug abuse, which reflects poor judgment, is also a factor that may be considered when determining the child's best interest."  *Id.* (citing *In re M.R.*, 243 S.W.3d 807, 820 (Tex. App.—Fort Worth 2007, no pet.)).  While the emotional and physical needs of Zach now and in the future were great given his young age, Mother had no means to provide for them because she was incarcerated and could not physically be with Zach.  Also, Mother was homeless and unemployed, and "[a] parent who lacks stability, income, and a home is unable to provide for a child's emotional and physical needs."  *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (alteration in original) (quoting *In re J.R.W.*, No. 14-12-00850-CV, 2013 WL 507325, at *9 (Tex. App.—Houston [14th Dist.] Feb. 12, 2013, pet. denied) (mem. op.)).  The evidence at trial showed that Mother placed the child in physical danger by regularly using methamphetamine during her pregnancy and occasionally using marihuana.  That

12

demonstrated that Mother exercised poor judgment and lacked parenting skill. Also, while Mother had obtained a parenting workbook in jail, she had not yet completed it by the time of trial. As a result, we find that the second, third, and fourth *Holley* factors weigh in favor of terminating Mother's parental rights.

We find the fifth factor neutral because, while there were programs available to assist Mother, they were not available to her in the Gregg County Jail.

As for the sixth and seventh factors, Mother had no stable home at the time of trial and admitted that she had no plan that would enable her to live with Zach. Instead, Mother's plan was for Zach to remain in Mandy and Keith's care. The Department's plan was for Zach to remain in Mandy and Keith's home, which was appropriate and loving. The record shows that Mandy and Keith wished to adopt Zach. When weighing those options, we conclude that the trial court was free to find that the Department had a better plan for Zach in light of Mother's history of instability. As a result, the sixth *Holley* factor weighs against Mother.

As for the last two factors, Mother's history of drug use and criminal activity show that the existing parent-child relationship was inappropriate. While Mother could not complete her family service plan due to her incarceration, the record shows that Mother was jailed three separate times during the pendency of the case and that she had no excuse for her incarceration.

Even though Zach was removed from Mother because of her drug use, Mother's last incarceration was the result of her possession of a controlled substance. As a result, we find that the remaining *Holley* factors weigh in favor of terminating Mother's parental rights.

13

After viewing all of the evidence in the light most favorable to the best-interest finding, we conclude that it was sufficiently clear and convincing that a reasonable fact-finder could have formed a firm belief or conviction that termination of the parent-child relationship between Mother and Zach was in the child's best interest. As a result, we overrule Mother's last point of error.

## V.      Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:      April 4, 2025
Date Decided:        April 7, 2025