

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-25-00458-CV

**IN THE INTEREST OF H.F.F.** and S.S.F., Children

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2023-PA-01668
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    H. Todd McCray, Justice

Sitting:         Irene Rios, Justice
                 Lori Massey Brissette, Justice
                 H. Todd McCray, Justice

Delivered and Filed: December 23, 2025

AFFIRMED

Mother appeals the trial court's order terminating her parental rights to her two children, H.F.F. and S.S.F.[1] Mother challenges only the sufficiency of the evidence supporting the trial court's best-interest determination under section 161.001(b)(2) of the Texas Family Code. Following our review of the record, we conclude the evidence sufficient to support the trial court's best interest finding. We therefore affirm the judgment of termination.

---

[1] To protect the privacy of the minor children, we refer to them by initials. TEX. FAM. CODE § 109.002(d); Tex. R. App. P. 9.8(b)(2).

## BACKGROUND

The Department of Family Protective Services became involved with Mother and her two children, H.F.F. and S.S.F,[2] in 2023 after receiving a report that Mother left the children with a roommate for approximately two days without communicating or providing a return time. When mother returned home, she smelled strongly of marijuana. The children were sleeping on a pile of blankets on the floor rather than in beds and there was a pervasive odor of animal urine in the home. Subsequent urinalysis revealed that Mother tested positive for marijuana and methamphetamine.

Based on the initial caseworker's observations and Mother's drug test results, the Department sought and obtained temporary managing conservatorship. Following the children's removal from her care, Mother moved from San Antonio to Austin. The children are currently placed with fictive kin, a former paramour of the children's father, in San Antonio.

The Department developed a family service plan intended to address the reasons for removal. The plan required Mother to complete a psychological evaluation, engage in individual counseling, attend parenting classes, submit to random drug testing, complete substance-abuse treatment, complete domestic violence counseling, follow all service recommendations, maintain safe and stable housing, and demonstrate a steady income. A case worker reviewed these requirements with Mother at the outset of the case. Mother was notified that these conditions were mandatory for reunification.

The case worker initially assigned to the case resigned from the Department several months before trial. The current case worker, Kiauna White, testified that Mother completed her psychological evaluation and drug assessment. Mother also maintained the same public housing

---

[2] At the time the Department became involved with the children, H.F.F. was four years old and S.S.F. was one year old.

duplex in Austin for approximately two years and produced a lease as proof of housing stability. Mother testified that she had beds, clothing, and supplies for the children within the home. Mother further testified that she is employed by a nonprofit organization and has recently begun working for a telecommunications company. She earns between $300-$400 a week.

White testified that supervised visits between Mother and the children were intended to occur weekly, but the visits were often inconsistent due to Mother missing or canceling appointments, arriving late, or bringing unauthorized attendees. White admitted that some recent issues with missed visits and scheduling gaps coincided with caseworker transition periods.

White testified that Mother had a drug relapse in 2024. Mother acknowledged that she used methamphetamine as late as September 2024. She also admitted marijuana use into December 2024. She claims she has not used drugs since that time. Two hair-follicle tests conducted in early 2025 were positive for marijuana metabolites. Due to difficulties in coordination with courtesy workers, Mother has not submitted to a drug test since January 2025.

White testified that Mother was discharged unsuccessfully from a Department-referred drug treatment program in March 2025. However, Mother claims to have enrolled in intensive outpatient treatment at Oak Springs Treatment Center. Mother produced a certificate stating that she completed treatment at Oak Springs on March 18, 2025. The Department disputed the validity of Mother's certificate, noting that Oak Springs representatives indicated to White that Mother had been discharged from the program for lack of attendance and that Oak Springs did not issue the certificate. No witness from the treatment center testified to clarify this conflict, causing the trial court to express concern regarding potential fraud on the court.

White testified that she never received the previous caseworker's files. White stated that substantial portions of the file, including visitation records, service-participation documentation,

and case notes were missing or unavailable for her to review. She stated that she had little firsthand knowledge of whether Mother completed service components prior to her involvement in the case because the records regarding those requirements were lost. White explained the situation to Mother and asked Mother to forward her records to her as the new case worker, but Mother has failed to do so.

White testified she was able to access information regarding previous compliance via court permanency orders. This included information that mother had begun individual counseling but was discharged prior to completion. Mother testified that she left this Department-referred counseling because she wanted to find a faith-based counselor. According to White, Mother has not provided any information regarding a new faith-based counselor. Mother claimed that she received individual counseling, domestic violence counseling, and parenting classes through her treatment at Oak Springs. However, when attempting to verify Mother's treatment at Oak Springs, White learned that Oak Springs was strictly a drug treatment facility and it did not offer parenting classes. Overall, the department determined that Mother had failed to complete her service plan.

The Department reported the children have adjusted well to their current placement and have formed strong bonds with the caregiver. The caregiver testified that the children's behavior has improved since living with her and that she has sought appropriate care and treatment for the children. The children call the caregiver "Mom" and she wishes to permanently adopt them. CASA volunteers independently evaluated the placement and supported termination and permanent placement with the caregiver, noting inconsistent engagement from Mother, an improvement in the children and a strong bond between the children and the caregiver.

Following a two-day bench trial, the trial court took the case under advisement for thirty days, expressing a desire to hear directly from employees at Oak Springs Treatment Center

regarding Mother's claims that she completed treatment at that facility. The record does not reflect any further testimony from or correspondence with anyone from Oak Springs. The court terminated Mother's rights pursuant to section 161.001(b)(N), (O) and (P) of the Texas Family Code, finding that Mother constructively abandoned H.F.F. and S.S.F., failed to comply with the provisions of a court order that established the actions necessary for her to obtain their return, used a controlled substance in a manner that endangered their health and safety, and that termination of Mother's parental rights was in the children's best interest. The trial court granted conservatorship of the children to the Department.

## STANDARD OF REVIEW

Involuntary termination of parental rights requires the Department to prove both that the parent committed a predicate act under subsection 161.001(b)(1) of the Family Code and that termination is in the child's best interest. *See* TEX. FAM. CODE § 161.001(b). Given the profound consequences of terminating a parent's rights to her child, the Department must prove both elements by clear and convincing evidence. *See* TEX. FAM. CODE § 161.206(a); *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018); *In re J.F.C.*, 96 S.W.3d 256, 263-64 (Tex. 2002). Clear and convincing evidence is the degree of proof that will produce in the factfinder a firm belief or conviction as to the truth of the allegations. *Interest of N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (citing TEX. FAM. CODE *§ 101.007*). This heightened standard of proof necessarily extends to appellate review in such cases. *A.C.*, 560 S.W.3d at 630–31; *Interest of G.M.M.*, 721 S.W.3d 679, 683 (Tex. App.—San Antonio 2025, no pet.).

Mother does not contest the trial court's findings regarding predicate grounds. Instead, she focuses her challenge on the best interest finding, arguing that the evidence is both legally and factually insufficient to support a finding that termination of her parental rights is in her children's

best interest. We therefore treat the unchallenged predicate grounds as binding and limit our review to the best interest determination. *See A.C.*, 560 S.W.3d at 631; *Interest of K.G.S.*, No. 04-25-00254-CV, 2025 WL 2408553, at \*2 (Tex. App.—San Antonio Aug. 20, 2025, pet. denied) (mem. op.). In reviewing that finding, we evaluate the record with the trial court's discretion in mind, remembering that the trial court is the sole judge of witness credibility, the weight of testimony, and the resolution of evidentiary conflicts. *In re R.R.A.*, 687 S.W.3d 269, 276 (Tex. 2024); *In re J.F.-G.*, 627 S.W.3d 304, 312, 317 (Tex. 2021).

When reviewing the legal sufficiency of evidence supporting termination, we examine all the evidence in the light most favorable to the trial court's finding to determine whether a reasonable factfinder could form a firm belief or conviction that termination is in the child's best interest. *See A.C.*, 560 S.W.3d at 630–31; *J.F.C.*, 96 S.W.3d at 266. We resolve disputed evidence in favor of the finding when reasonable and disregard contrary evidence unless a reasonable factfinder could not. *Id.*; *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at \*2 (Tex. App.—San Antonio Nov.1, 2017, pet. denied) (mem. op.). If no reasonable factfinder could reach that conclusion on the record before it, the evidence is legally insufficient and judgment must be rendered for the parent. *Id.*

A factual sufficiency analysis, in comparison, requires us to weigh all the evidence—supporting, conflicting and contrary—to determine whether a reasonable factfinder could form a firm belief or conviction that the finding is true. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). If the contrary evidence is so significant that it prevents a reasonable factfinder from forming a firm belief or conviction in the truth of the finding, the evidence is factually insufficient. *In re A.B.*, 437 S.W.3d 498, 503 Tex. 2014); *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at \*2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem.

op.). But when the evidence, viewed as a whole, permits a firm belief or conviction, we must defer to the factfinder's judgment. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009); *C.H.*, 89 S.W.3d at 26.

## BEST INTEREST

When considering the best interest of a child in the context of involuntary parental termination, a strong presumption favors preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). At the same time, the Texas Family Code presumes that prompt and permanent placement of the child in a safe environment is in a child's best interest. TEX. FAM. CODE § 263.307(a). The Department must rebut the first presumption and satisfy the second with clear and convincing evidence. *Interest of E.J.M.*, 673 S.W.3d 310, 332 (Tex. App.—San Antonio 2023, no pet.)

Courts evaluate best interest using a non-exclusive list of statutory factors.[3] TEX. FAM. CODE § 263.307(b). The Texas Supreme Court has also provided a similar framework[4] to consider in determining a child's best interest. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

---

[3] These factors include: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills... ; and (13) whether an adequate social support system ... is available to the child. TEX. FAM. CODE ANN. § 263.307(b).

[4] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley*, 544 S.W.2d at 371–72; *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at \*3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.).

When evaluating a child's best interest, courts may consider circumstantial evidence, subjective factors, and the totality of the evidence along with the direct evidence. *In re B.R.*, 456 S.W.3d 612, 615 (Tex. App.—San Antonio 2015, no pet.); *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). The factfinder may measure a parent's future ability to meet a child's needs by the parent's past conduct. *C.H.*, 89 S.W.3d at 28; *E.D.*, 419 S.W.3d at 620. Conduct supporting a statutory ground for termination is likewise probative of best interest. *Id*. Ultimately, the focus must remain on the child's best interest, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). We evaluate the record in this case in light of these guiding principles.

## ANALYSIS

Although the record is limited, the evidence that was admitted at trial, when viewed through the lens of the heightened standard of review and deference owed to the factfinder, is legally and factually sufficient to support the trial court's best-interest finding. *See A.C.*, 560 S.W.3d at 630; *H.R.M.*, 209 S.W.3d at 108. Our task is not to reweigh the evidence but to determine whether a reasonable factfinder could form a firm belief or conviction that termination is in the children's best interest. *J.F.C.*, 96 S.W.3d at 266. We conclude that it could.

### A. Mother's Drug Use

As noted, a trial court may evaluate a parent's future conduct by considering past conduct when determining best interest. *E.D.*, 419 S.W.3d at 620. Specifically, Texas courts consistently

hold that a parent's continued drug use during a termination case is highly probative of present and future danger to a child. *See R.R.A.*, 687 S.W.3d at 281; *J.O.A.*, 283 S.W.3d at 346; *Interest of N.J.H.*, 575 S.W.3d 822, 834-35 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *L.G.R.*, 498 S.W.3d at 204–05; *In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.).This court has done the same. *See Interest of K.G.S.*, No. 04-25-00254-CV, 2025 WL 2408553, at *3 (Tex. App.—San Antonio Aug. 20, 2025, pet. denied) (mem. op.); *Interest of A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.); *In re A.M.O.*, No. 04-17-00798-CV, 2018 WL 2222207, at *2 (Tex. App.—San Antonio May 16, 2018, no pet.) (mem. op.); *In re M.C.*, 482 S.W.3d 675, 685–86 (Tex. App.—San Antonio 2016, pet. denied).

In this case, Mother admitted to using methamphetamine before and during the case. She also acknowledged marijuana use during the pendency of these proceedings. Mother's testimony was vague regarding the timing of her drug use. She claimed that she had not used drugs since September 2024, but then almost immediately stated that she used marijuana around Christmas. In any event, the last drug tests available confirmed Mother's methamphetamine, amphetamine and marijuana use long after the children were removed from her care. While Mother argues she completed treatment and is sober now, the trial court was not required to accept those assertions, especially in light of the timing and nature of her proof.

Many of Mother's compliance documents, including her drug treatment certificate, were provided only hours before trial began. The certificate Mother produced indicated that she successfully completed treatment. However, the case worker testified that when she attempted to verify the certificate during a trial hiatus, the provider reported an unsuccessful discharge due to lack of attendance and would not verify the authenticity of the certificate. Mother produced no

supporting treatment records or provider testimony to reconcile the conflict. The court expressed concern that the certificate was not reliable, going as far as to admonish Mother as to "fraud on the court." The trial court even delayed its ruling to give Mother the opportunity to establish the veracity of her certificate. Yet, there is no evidence that she did so.

Given the timing, inconsistency, and lack of authentication, a reasonable factfinder could conclude that the purported certificate Mother offered did not establish meaningful treatment and instead undermined Mother's credibility regarding her sobriety. *J.O.A.*, 283 S.W.3d at 346. "Because drug use can destabilize the home and expose children to physical and emotional harm if not resolved, evidence of drug use weighs in favor of termination." *K.G.S.*, 2025 WL 2408553, at *3.(citing *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.)). Among other things, "a parent's illegal drug use exposes a child to the possibility that the parent may be impaired or imprisoned." *In re R.W.*, No. 04-21-00025-CV, 2021 WL 2446208, at *3 (Tex. App.—San Antonio Jun. 16, 2021, no pet.) (mem. op.).

The fact that Mother continued to use drugs during the pendency of this case, knowing her parental rights were at stake, is evidence of Mother's inability or unwillingness to prioritize her children. *In re A.J.D.-J.*, 667 S.W.3d 813, 825 (Tex. App.—Houston [1st Dist.] 2023, no pet.). This evidence weighs in favor of termination under the second, third, fourth and eighth *Holley* factors.

**B. Mother's Efforts at Reunification**

This case turned heavily on conflicting testimony regarding Mother's engagement in the process of reunifying with her children. In addition to the uncertainty surrounding Mother's drug

treatment, the Department caseworker testified that Mother missed multiple visits with her children, arrived late to visits, and did not comply with visitation parameters. Similar testimony regarding Mother's sporadic visitation and lack of engagement was given by the current caregiver and the CASA volunteer.

The caseworker further testified that Mother had failed to engage in court ordered individual counseling and parenting classes. Although Mother testified that her drug treatment included counseling and parenting classes, the caseworker was unable to verify this.

Where testimony is contradictory, appellate courts defer to credibility determinations as long as the record supports them. *See J.F.-G.*, 627 S.W.3d at 311-12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005); *In re B.T.K.*, No. 04-19-00587-CV, 2020 WL 908022, at *2 (Tex. App.—San Antonio Feb. 26, 2020, no pet.) (mem. op.). In this case, the trial court was able to weigh Mother's late efforts, potentially specious documentation, and unverified assertions of treatment against the history of her inconsistent engagement. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

A parent fails to maintain significant contact with her child when she fails to take advantage of the visitation rights provided or if the visits are intermittent or sporadic. *Interest of G.M.M.*, 721 S.W.3d 679, 684 (Tex. App.—San Antonio 2025, no pet.). Further, when a parent does not abide by the service plan put in place to achieve reunification, the factfinder may reasonably infer the parent is indifferent to the goal of family reunification. *A.J.D.-J.*, 667 S.W.3d at 824. We must presume the trial court believed the Department's testimony over Mother's and concluded that Mother failed to complete her service plan and was not appropriately engaged in reunification over the course of these proceedings. *See Interest of J.M.G.*, 608 S.W.3d 51, 53–54 (Tex. App.—San Antonio 2020, pet. denied). This evidence weighs in favor of termination under the second, fourth, fifth and eighth *Holley* factors.

**C. Children's Need for Stability**

The children were six and three years old at the time of trial and there is no evidence of their desires regarding custody. When a child is too young to express his desires, the factfinder may consider that the child has bonded with the caregiver, is well cared for by her, and has spent minimal time with a parent. *In re J.D.,* 436 S.W.3d 105, 118 (Tex. App.–Houston [14th Dist.] 2014, no pet.). Undisputed testimony established that the children are thriving in their placement, bonded to their caregivers, receiving needed services, and experiencing consistent stability. The court also heard testimony that the caregiver is working to obtain licensing to be able to adopt the children. Finally, the CASA volunteer recommended termination and permanent placement with the current caregiver.

A child's need for certainty and permanence, including the establishment of a stable home and familial relationships, is a principal consideration in a best interest decision. *See Id.*; *In re D.M.*, 452 S.W.3d 462, 472 (Tex. App.—San Antonio 2014, no pet.); *L.G.R.*, 498 S.W.3d at 205. The trial court could have reasonably considered the children's demonstrated progress and the risks associated with removing them from an established, stable home. Both Mother and the children's father argued that Mother's recent efforts and blood relation should outweigh placement stability, but given the history of neglect, the court's credibility concerns, the concerns about Mother's sobriety, and the children's clear need for long-term stability, the trial court was entitled to conclude otherwise. This evidence weighs in favor of termination on the first, second, fourth, sixth and seventh *Holley* factors.

**D. The Department's Missing Documentation**

Mother argues that gaps in the Department's records render the evidence insufficient. It is true that the record here contains significant gaps due to caseworker turnover, missing files, and

inconsistent documentation. Missing records, however, do not compel reversal in and of themselves. The question is whether the evidence actually presented, when viewed in light of the trial court's credibility determinations, could produce a firm conviction regarding best interest. *See In re A.C.*, 560 S.W.3d at 631.

The trial court expressly recognized the Department's poor recordkeeping, questioned gaps in the file, and acknowledged the resulting deficiencies. Still, it concluded that Mother's own conduct—her drug use, inconsistent engagement, missed visits, contradictory statements about her services, and questionable compliance materials—outweighed the absence of additional documentation. Because the evidence in this case consisted largely of conflicting testimony and contested compliance materials, the trial court's credibility determinations are entitled to substantial deference. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

Critically, Mother claimed she completed individual counseling, parenting classes, and drug treatment at Oak Springs in March 2025, two months before trial. She produced only what she claimed was a completion certificate for these services. She did not testify, offer supporting materials, or identify participation in any other services. On this record, any missing documentation did not affect the Department's proof. The issue here is not what the Department failed to produce, but what Mother failed to do. The record is indeed thin, but thinness alone does not render it insufficient. See *In re B.M.M.*, No. 04-21-00089-CV, 2021 WL 3377587, at *1 (Tex. App.—San Antonio Aug. 4, 2021, no pet.) (mem. op.) (affirming termination where only evidence submitted by department was caseworker testimony); *Interest of J.M.G.*, 608 S.W.3d 51, 56 (Tex. App.—San Antonio 2020, pet. denied) (affirming termination on former termination judgments and nineteen pages of trial testimony).

**CONCLUSION**

The case presents a thin and imperfect record because the Department failed to preserve documentation and Mother waited until the eve of trial to produce her own. However, viewing the record as a whole, the trial court could have reasonably formed a firm conviction that termination of Mother's parental rights was in H.F.F.'s and S.S.F.'s. best interest. Likewise, the evidence weighing against termination is not so significant to conclude that the trial court's decision was unreasonable. We conclude the evidence is legally and factually sufficient to support the trial court's finding that termination was in the best interest of the children.

We note, however, that the Department's failure to preserve documentation placed this case dangerously close to a finding of factual insufficiency when examined under clear and convincing scrutiny. We caution the Department that similar deficiencies in future cases may compel a different outcome.

We affirm the termination order based on the uncontested predicate findings and the best-interest finding under § 161.001(b)(2).

H. Todd McCray, Justice