

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-26-00018-CV

IN THE INTEREST OF P.A., JR., L.L.-A., AND S.A., CHILDREN

On Appeal from the County Court at Law
Lamar County, Texas
Trial Court No. 93379

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

# MEMORANDUM OPINION

The Department of Family and Protective Services filed a petition to terminate Mother's and Father's parental rights to their children, Peter, Lucas, and Sally.[1] The trial court terminated parental rights after finding that (1) Mother and Father "knowingly placed or . . . allowed the child[ren] to remain in conditions or surroundings [that] endanger[ed their] physical or emotional well-being," (2) Mother and Father "engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct [that] endanger[ed their] physical or emotional well-being," (3) Mother "contumaciously refused to submit to a reasonable and lawful order of a court under Subchapter D, Chapter 261, [of the] Texas Family Code," (4) Mother used a controlled substance in a manner that endangered the health or safety of the children and failed to complete a court-ordered substance abuse treatment program, and (5) termination of Mother's and Father's parental rights was in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (I), (P), (b)(2) (Supp.).

On appeal, Mother and Father argue that the evidence was insufficient to support the trial court's findings on grounds D and E of the Texas Family Code.[2] *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). Mother also challenges the trial court's best-interest findings. Because we find that the trial court's rulings were supported by sufficient evidence, we affirm the trial court's judgment.

---

[1]We use pseudonyms to protect the identities of the children. *See* TEX. R. APP. P. 9.8.

[2]Mother does not challenge the trial court's findings on grounds I and P of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(I), (P).

## I.    Standard of Review

"Proceedings to terminate the parent–child relationship implicate rights of constitutional magnitude that qualify for heightened judicial protection."  *In re A.C.*, 560 S.W.3d 624, 626 (Tex. 2018).  The United States Supreme Court has emphasized that "the interest of [a] parent[] in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by th[e] Court."  *Troxel v. Granville*, 530 U.S. 57, 65, (2000) (plurality op.).  As a result, "[w]e strictly construe involuntary termination statutes in favor of the parent."  *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012).

"Involuntary severance of parental rights thus requires 'clear and convincing evidence' that termination is warranted and in the child[ren]'s best interest[s]."  *In re A.C.*, 560 S.W.3d at 626 (quoting TEX. FAM. CODE ANN. § 161.001; *Santosky v. Kramer*, 455 U.S. 745, 748 (1982)). "Clear and convincing evidence" is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  TEX. FAM. CODE ANN. § 101.007 (Supp.); *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam).  Therefore, this Court is required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights."  *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, '"the rights of natural parents are not absolute; protection of the child is paramount."'"  *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.) (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189,

3

195 (Tex. 1994))). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.)).

"[T]he appellate standard for reviewing termination findings is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re A.C.*, No. 06-25-00084-CV, 2026 WL 878798, at *2 (Tex. App.—Texarkana 2026, no pet.) (mem. op.) (alteration in original) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). "Both legal and factual sufficiency review deal with whether 'a reasonable factfinder could form a firm belief or conviction,' but there is a difference between legal and factual sufficiency." *Id.* (quoting *In re A.C.*, 560 S.W.3d at 631).

For legal sufficiency, "we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that" termination of the parent-child relationship was in the best interests of the children. *In re L.E.S.*, 471 S.W.3d at 920 (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *In re J.P.B.*, 180 S.W.3d at 573).

By comparison, when reviewing factual sufficiency, "we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing

4

*In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine '"whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations."'" *Id.* (alteration in original) (quoting *In re H.R.M.*, 209 S.W.3d at 109 (quoting *In re C.H.*, 89 S.W.3d. at 25)). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). To make this determination, we undertake "an exacting review of the entire record with a healthy regard for the constitutional interests at stake." *Id.* (quoting *In re A.B.*, 437 S.W.3d at 503 (quoting *In re C.H.*, 89 S.W.3d at 26)).

## II.     The Evidence at Trial

At the February 2026 trial, Amber Ivy, a supervisor with Child Protective Services (CPS), testified that, in December 2024, CPS learned that Mother, who had a total of nine children and a prior CPS history, had been arrested for possessing drug paraphernalia in November 2024. According to Ivy, Mother failed to submit to a court-ordered drug test. For that reason, the trial court ordered Mother to participate in and abide by the recommendations of a substance abuse and psychosocial assessment and complete random drug testing. Ivy testified that Mother's substance-abuse assessment recommended "outpatient intensive services at Lakes Regional MHMR," which Mother refused to attend. Ivy also said that Mother did not complete her psychosocial assessment.

Ivy testified that Mother tested positive for amphetamine and methamphetamine on March 6, 2025, married a "child murderer" named Patrick Mosley in April, and refused to take drug tests on April 17 and 18, and May 5. Ivy said that, on May 13, Mother dropped her urine specimen in the toilet, was provided a new cup to collect another specimen, and that specimen contained an unidentified substance. According to Ivy, Mother admitted that she last used methamphetamine with Father, who also failed to abide by CPS's requests for drug testing, and that the children were removed from Mother and Father's home in May 2025 as a result.

Brianna Lynwood, a permanency specialist for 4Kids4Families, informed the trial court that Mother and Father had a history with the Department for the past seven to nine years. Lynwood testified that Mother's service plan required her to be employed and complete parenting classes, but Mother was unemployed and had not started her parenting classes. Lynwood said that while Mother began substance abuse classes, she stopped going and was placed on the "inactive list." According to Lynwood, Mother tested positive for methamphetamine and amphetamine on August 7, 2025, and missed several other drug tests, including court-ordered testing on November 15. Lynwood said that Mother missed ten out of twelve requested drug tests and that, as a result, Mother was not permitted to visit the children.

As for Father, Lynwood testified that Father was supposed to complete a parenting class, individual counseling, substance-abuse assessment, and random drug testing. According to Lynwood, Father had not taken any parenting class, refused drug testing four times, including court-ordered drug testing, and said that "he was not part of the case and that [Lynwood] needed to leave off his front door." Lynwood testified that Father did complete a drug test on

November 4, 2025, which was positive for methamphetamine and amphetamine, but he again refused to drug test in December. Father was also supposed to provide proof of employment but had not done so.

Lynwood and Shante Jefferson, a court-appointed special advocate case manager, testified that the children were placed with their maternal aunt in a safe, appropriate home that was meeting the children's needs. Jefferson testified that the children were doing well in school, went to church, and enjoyed being together. Jefferson testified that she attempted to remain in contact with Mother and Father, but that they did not consistently respond to her.

Jefferson was concerned that "it [would not] be safe to return th[e]se children back home" since Mother and Father had not "shown any long-term sobriety." For that reason, Lynwood and Jefferson testified that termination of Mother's and Father's parental rights was in the children's best interests.

At trial, Mother admitted that she received a ticket for drug paraphernalia at the beginning of the case and was later given a family-based service plan. Mother, who had other criminal cases before the trial court, testified that she was released from a substance-abuse felony punishment facility. Mother admitted she married Mosley, who was in prison for murder, but claimed that she was unaware that he had strangled a child younger than six-years-old at the time she married him. She said, "I married him having a blind eye to what [Mosley's] charges were."

Mother said that she was aware of the order to complete parenting classes but had not started them and knew she was "let out" of substance abuse counseling. Mother claimed that she did not get any of Lynwood's or Jefferson's text messages because her "phone [had] been off,"

and denied receiving requests to complete drug testing. Even so, she admitted that she had been found in contempt of court for not following the trial court's order for drug testing. Mother also said that she was unemployed.

Mother asked the trial court not to terminate her parental rights, stating that "everything that [she does, she does] for [her] kids, even though [her] past drug history is what it is or whatever." Mother testified that she believed that her sister was trying to take her children away from her.

Jessica Holtman, the children's ad litem, testified that the children had not seen their parents once since their placement with their maternal aunt. Holtman mirrored Lynwood's and Jefferson's testimony on how well the children were doing in their maternal aunt's care. As a result, Holtman also recommended termination of Mother's and Father's parental rights.

After hearing the evidence, the trial court terminated Mother's and Father's parental rights to the children.

## III.     Sufficient Evidence Supports the Grounds D and E Findings

In their first point of error, Mother and Father argue that the trial court erred in its grounds D and E findings. "Generally, '[o]nly one predicate ground and a best interest finding are necessary for termination, so "a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground."'" *In re C.C.*, 720 S.W.3d 41, 57 (Tex. App.—Texarkana 2025, no pet.) (alteration in original) (quoting *In re M.P.*, 639 S.W.3d 700, 702 (Tex. 2022) (per curiam) (quoting *In re N.G.*, 577 S.W.3d at 232)). Even so, "due process requires that courts also review

termination under Subsections 161.001(b)(1)(D) and (E) even after affirming termination on another ground because of the collateral effects of termination on those grounds." *In re M.P.*, 639 S.W.3d at 702.

Ground D permits termination of parental rights "if the court finds by clear and convincing evidence . . . that the parent has . . . knowingly placed or knowingly allowed the child[ren] to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[ren]." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Ground E permits termination of parental rights "if the court finds by clear and convincing evidence . . . that the parent has . . . engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct which endangers the physical or emotional well-being of the child[ren]." TEX. FAM. CODE ANN. § 161.001(b)(1)(E).

Endanger "means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment." *In re E.N.C.*, 384 S.W.3d at 803. "'[E]ndanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re N.S.G.*, 235 S.W.3d 358, 367 (Tex. App.—Texarkana 2007, no pet.) (quoting *Boyd*, 727 S.W.2d at 533); *see In re L.E.S.*, 471 S.W.3d at 923. "It is not necessary that the conduct be directed at the child or that the child actually suffer injury." *In re L.E.S.*, 471 S.W.3d at 923.

When evaluating ground D, "we are to examine the time prior to [the children's] removal to determine whether the environment of the home posed a danger to [their] physical or emotional well-being." *In re D.R.*, 631 S.W.3d 826, 833 (Tex. App.—Texarkana 2021, no pet.)

(alterations in original) (quoting *In re L.E.S.*, 471 S.W.3d at 926). "Ground '(D) permits termination [of parental rights] based on a single act or omission [by the parent].'" *Id.* (alterations in original) (quoting *In re L.C.*, 145 S.W.3d 790, 797 (Tex. App.—Texarkana 2004, no pet.)). "[U]nlawful conduct by a parent . . . can create an environment that endangers the physical and emotional well-being of a child as required for termination under [Ground] (D)." *Id.* at 834 (alterations in original) (quoting *In re C.J.B.*, No. 05-19-00165-CV, 2019 WL 3940987, at *6 (Tex. App.—Dallas Aug. 21, 2019, no pet.) (mem. op.)).

Here, the record shows that Mother and Father had a long history with CPS, which had resulted in the older siblings of the children also being placed in their maternal aunt's care. "[U]nlawful conduct by persons who live in the child[ren]'s home or with whom the child[ren are] compelled to associate on a regular basis in [their] home is a part of the 'conditions or surroundings' of the child[ren]'s home under section D." *In re N.B.*, No. 06-12-00007-CV, 2012 WL 1605457, at *9 (Tex. App.—Texarkana May 8, 2012, no pet.) (mem. op.) (quoting *Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)). The record shows that Mother admitted to a history of drug use and tested positive for methamphetamine and amphetamine prior to the children's removal from her care in May 2025. Mother, who also had criminal charges due to a November 2024 arrest for drug paraphernalia, testified that she had used drugs with Father, who refused CPS's requests to complete a drug test prior to the children's removal. Because "[a] fact-finder can reasonably infer that a parent is using drugs from that parent's refusal to submit to drug tests," *In re C.C.*, 720 S.W.3d at 64 n.28 (citing *In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet.)), the trial court could

conclude that Father was using illegal drugs.  Also, before the children were removed, Mother married a man who was in prison for the murder of a young child.  "A parent endangers her child[ren] by accepting endangering conduct of other people." *In re K.K.D.B.*, No. 14-17-00302-CV, 2017 WL 4440546, at *9 (Tex. App.—Houston [14th Dist.] Oct. 5, 2017, pets. denied) (mem. op.) (finding that mother's choice of dating partner endangered the child); *see In re T.L.C.*, No. 01-17-00498-CV, 2018 WL 4139004, at *19 (Tex. App.—Houston [1st Dist.] Aug. 30, 2018, pets. denied) (mem. op.).

"[I]llegal drug use by a parent . . . supports the conclusion that the children's surroundings endanger their physical or emotional well-being."  *In re K.B.*, No. 06-20-00074-CV, 2020 WL 7702179, at *4 (Tex. App.—Texarkana Dec. 29, 2020, no pet.) (mem. op.) (quoting *In re L.E.S.*, 471 S.W.3d at 925).  Consequently, the trial court could find that the parents' illegal drug use posed a danger to the children's emotional and physical well-being by, among other things, exposing them to the possibility of losing a parent through incarceration or, as in this case, by converting a family-based services case to a case for termination of parental rights.  The trial court was also free to find that Mother's marriage to Mosley endangered the children's physical health and well being.[3]  In sum, we find that legally and factually sufficient evidence supported the trial court's ground D findings.

Next, "termination under [ground] (E) must be based on more than a single act or omission.  Instead, a 'voluntary, deliberate, and conscious course of conduct by the parent is

---

[3]Father argues in his brief that "there was little direct evidence about Father's actions before removal."  Yet, the trial court was free to conclude that Father's drug use created an endangering environment for the children or, at the very least, that he was aware of Mother's CPS investigation, drug history, and marriage to Mosely, but allowed the children to remain in her care.

required.'" *Id.* (quoting *In re L.E.S.*, 471 S.W.3d at 923) (quoting *Perez v. Tex. Dep't of Protective & Regul. Servs.*, 148 S.W.3d 427, 436 (Tex. App.—El Paso 2004, no pet.) (citing *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.)))). "Ground E 'refers only to the parent's conduct, as evidenced not only by the parent's acts, but also by the parent's omissions or failures to act.'" *In re R.G.*, No. 06-24-00035-CV, 2024 WL 4142842, at *5 (Tex. App.—Texarkana Sept. 11, 2024, no pet.) (mem. op.) (quoting *In re S.K.*, 198 S.W.3d 899, 902 (Tex. App.—Dallas 2006, pet. denied)). "The endangering conduct may also occur 'either before or after the child[ren]'s removal by the Department.'" *Id.* (quoting *In re Z.J.*, No. 02-19-00118-CV, 2019 WL 6205252, at *11 (Tex. App.—Fort Worth Nov. 21, 2019, pet. denied) (mem. op.) (citing *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied))). "In our analysis under ground E, we may also consider a parent's failure to complete relevant requirements of a family service plan." *In re R.G.*, 2024 WL 4142842, at *5 (citing *In re Z.J.*, 2019 WL 6205252, at *11; *In re U.H.R.*, No. 07-18-00318-CV, 2019 WL 81874, at *5 (Tex. App.—Amarillo Jan. 2, 2019, no pet.) (mem. op.)).

Also, "'[b]ecause it exposes the child[ren] to the possibility that the parent may be impaired or imprisoned, illegal drug use may [also] support termination under' Ground E." *In re H.M.J.*, No. 06-18-00009-CV, 2018 WL 3028980, at *5 (Tex. App.—Texarkana June 19, 2018, no pet.) (mem. op.) (quoting *In re A.L.*, No. 06-14-00050-CV, 2014 WL 5204888, at *7 (Tex. App.—Texarkana Oct. 8, 2014, no pet.) (mem. op.) (quoting *Walker*, 312 S.W.3d at 617)). "A parent's failure to remain drug-free while under the Department's supervision will support a

finding of endangering conduct under [ground] (E) . . . ." *Id.* (quoting *In re J.A.W.*, No. 02-08-215-CV, 2009 WL 579287, at \*4 (Tex. App.—Fort Worth Mar. 5, 2009, no pet.) (per curiam) (mem. op.) (citing *Vasquez v. Tex. Dep't of Protective & Regul. Servs.*, 190 S.W.3d 189, 196 (Tex. App.—Houston [1st Dist.] 2005, pet. denied))).

Here, ample evidence shows that Mother and Father did not remain drug free during the pendency of the case. Mother tested positive for methamphetamine and amphetamine on August 7, 2025. Father tested positive for the same drugs on November 4. Between both, Father and Mother had a total of sixteen presumed positive drug tests. Further, Mother refused to attend the recommended "outpatient intensive services at Lakes Regional MHMR," and did not complete her psychosocial assessment or parenting classes. Father told Lynwood that "he was not part of the case" and failed to comply with his family service plan. Also, Mother had other criminal cases before the trial court and admitted that she was released from a substance-abuse felony punishment facility during the pendency of the case. From this clear and convincing evidence, the trial could conclude that both parents engaged in conduct that endangered the children's physical or emotional well-being. Accordingly, we find that the evidence was legally and factually sufficient to support the trial court's ground E findings.

Having found that legally and factually sufficient evidence supports the trial court's grounds D and E findings, we overrule the parents' first point of error.

13

## IV. Sufficient Evidence Supported the Best Interests Finding

Next, Mother argues that the trial court erred in its best-interest findings.[4]  In determining the best interests of a child, courts consider the following *Holley*[5] factors:

> (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) their plans for the child; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.

*In re A.A.*, 670 S.W.3d 520, 534 n.57 (Tex. 2023) (citing *Holley*, 544 S.W.2d at 372); *see In re E.N.C.*, 384 S.W.3d at 807.  However, "the *Holley* factors are not a checklist[.]" *In re C.C.*, 720 S.W.3d at 59.  "Consequently, the fact-finder may choose to give greater weight to one factor over others." *Id.*  Further, in the best-interest analysis, we may consider evidence used to support the grounds for termination of parental rights.  *In re C.H.*, 89 S.W.3d at 28.

At the time of trial, Peter was seven, Lucas was four, and Sally was three.  Lynwood testified that the children had not seen or talked to their parents since they were placed with their maternal aunt, which is "where they want[ed] to be."  Jefferson testified that the children "love[d]" their placement and "want[ed] to stay forever."  Also, the record shows that the children were "very bonded" to their maternal aunt, who wished to adopt them, and had also cared for their older siblings before.  As a result, the trial court could have formed a firm belief

---

[4]Father does not challenge the trial court's best-interest findings.  *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

[5]*Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976).

or conviction that this factor weighed in favor of terminating Mother's and Father's parental rights. *See In re K.O.*, 488 S.W.3d 829, 840 (Tex. App.—Texarkana 2016, pet. denied).

As for the next three factors, we consider "that a parent is unable to provide adequate care for a child, lacks parenting skills, or exercises poor judgment." *In re M.C.*, 482 S.W.3d 675, 688 (Tex. App.—Texarkana 2016, pet. denied). "Parental drug abuse, which reflects poor judgment, is also a factor that may be considered when determining the child's best interest." *Id.* The emotional and physical needs of the children were typical of children their age, with the exception of Lucas who needed speech therapy. However, the record shows that Mother posed a danger to the children because of her continued drug use, which led to her placement in a substance-abuse felony punishment facility, and lacked the parenting ability needed to obtain their return while the maternal aunt cared for her children's needs. Mother, whose older children had also stayed with their maternal aunt, testified that she was unemployed and did not complete the required parenting classes, among other things required by her family-service plan. Also, the trial court could find that Mother exercised poor judgment by marrying a man in prison for the murder of a young child while "having a blind eye to what his charges were." As a result, the trial court could have formed a firm belief or conviction that the second, third, and fourth *Holley* factors weighed in favor of terminating Mother's parental rights.

As for the fifth factor, Mother failed to take advantage of the programs available to assist her. She did not complete parenting classes, substance abuse counseling, or an outpatient drug-treatment program recommended after her substance-abuse assessment, even though required by

her family-service plan. As a result, the trial court could have formed a firm belief or conviction that the fifth *Holley* factor weighed in favor of terminating Mother's parental rights.

The sixth and seventh factors consider the plans for the children and the stability of the home. Lynwood testified that Mother had moved to Houston and that she had not been able to view the home to determine whether it was appropriate, although Mother testified at trial that she had moved back to Paris, Texas, and had a "three-bedroom, brick house" that was safe. Even so, Mother's continued positive and presumed positive drug tests showed that she could not provide a drug-free environment for the children. Further, the stability of Mother's home was compromised by her marriage to a convicted murderer. The Department's plan was to terminate Mother's parental rights so the children could be adopted by their maternal aunt, who, according to Lynwood, Jefferson, and Holtman, was providing an appropriate home that accounted for all of their needs. Because there was no guarantee that Mother could remain drug free, the trial court could have formed a firm belief or conviction that the sixth and seventh factors weighed in favor of terminating Mother's parental rights.

As for the last two factors, Mother's drug use prevented her visitation with the children during the entire case and shows that the existing parent-child relationship was not a proper one. While Mother claimed that she was unaware of some communication from the Department because her phone had "been off," Mother had no excuse for her drug use or her criminal charges, especially when knowing that they could result in termination of her parental rights. Accordingly, the trial court could have formed a firm belief or conviction that the remaining *Holley* factors weighed in favor of terminating Mother's parental rights.

16

After viewing all of the evidence in the light most favorable to the best-interest findings, we conclude that it was sufficiently clear and convincing such that a reasonable fact-finder could have formed a firm belief or conviction that termination of the parent-child relationship between Mother and her children was in the children's best interests. As a result, we overrule Mother's last point of error.

## V.      Conclusion

We affirm the trial court's judgment.


Scott E. Stevens
Chief Justice


Date Submitted:      May 18, 2026
Date Decided:        June 5, 2026