

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-26-00094-CV

IN THE INTEREST OF I.G., A CHILD

On Appeal from the 316th District Court
Hutchinson County, Texas
Trial Court No. 46,060, Honorable James M. Mosley, Presiding

June 16, 2026

OPINION

Before PARKER, C.J., and DOSS and PRATT, JJ.

In this accelerated appeal, appellant, Mother, seeks reversal of the trial court's judgment terminating her parental rights to her child, I.G., in a suit brought by the Texas Department of Family and Protective Services.[1]  By her appeal, Mother challenges the sufficiency of the evidence to support the statutory grounds for termination and the best-interest finding.  We affirm the trial court's judgment.

---

[1] To protect the privacy of the parties involved, we will refer to the appellant as "Mother," to the child's father as "Father," and to the child by his initials.  *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b).

**BACKGROUND**

Shortly after I.G.'s birth, law enforcement and the Department were called out to Mother and Father's home to investigate allegations of physical neglect of I.G. and methamphetamine use by Mother. Mother refused to cooperate with law enforcement and left the home. During the Department's investigation, the concerns of Mother's methamphetamine use were validated. The home was found to be in disrepair with no running water and no crib, diapers, baby wipes, or "anything to indicate that they were able to take care of a child there." The Department also learned that three-and-a-half-month-old I.G. was left with his paternal grandparents. The Department took emergency possession of I.G., filed its petition for protection, conservatorship, and termination, and requested emergency temporary managing conservatorship.[2] The trial court entered an order of emergency protection of I.G. citing a continuing danger to the physical health or safety of I.G. if he is returned to a parent. Following an adversary hearing, the Department was appointed temporary managing conservator of I.G. and his placement was continued with the paternal grandparents. Two of I.G.'s older siblings are also living with the paternal grandparents, and another sibling is living with the maternal grandparents.

The Department developed a family service plan for Mother, but she was incarcerated in the Carson County Jail and unable to complete any of the recommended services. During the pendency of this case, Mother was convicted of possession of methamphetamine with intent to deliver and sentenced to forty-five years' incarceration. Mother did not attend the final hearing.

---

[2] Father's parental rights were also terminated in this proceeding. Father does not appeal.

2

At the time of the final hearing, I.G. was almost two years old. The permanency specialist with St. Francis Ministries testified that I.G. is happy, content, and doing very well in his placement with the paternal grandparents. Upon entering this placement, I.G. was enrolled in Early Childhood Intervention (ECI) services three times per week to improve his motor skills and speech development. I.G. is walking and becoming more verbal. The paternal grandparents are in the process of becoming licensed so that they can adopt I.G.

The trial court terminated Mother's parental rights to I.G. on the grounds of endangering conditions, endangerment, engaging in criminal conduct resulting in her conviction, imprisonment, and inability to care for I.G. for at least two years from the original petition's file date, and causing the child to be born addicted to a controlled substance. *See* TEX. FAM. CODE § 161.001(b)(1)(D), (E), (P), (Q).[3] The trial court also found termination was in the best interest of I.G. *See* § 161.001(b)(2). The Department was appointed permanent managing conservator of I.G., and the placement with the paternal grandparents was continued. Mother timely filed this appeal of the resulting judgment.

### STANDARD OF REVIEW

A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky*

---

[3] Further references to provisions of the Texas Family Code will be by reference to "section ___" or "§ ___."

*v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *see In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003).  We strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent.  *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985).  However, "the rights of natural parents are not absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities."  *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003) (citing *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)).  Recognizing that a parent may forfeit his or her parental rights by his or her acts or omissions, the primary focus of a termination suit is protection of the child's best interests.  *See id*.

In a case to terminate parental rights under section 161.001 of the Family Code, the petitioner must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination, and (2) termination is in the best interest of the child.  § 161.001(b).  Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  § 101.007; *In re J.F.C.,* 96 S.W.3d 256, 264 (Tex. 2002).  Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact.  *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re K.C.B.*, 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet. denied).  "Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."  *In re A.V.*, 113 S.W.3d at 362.  We affirm a termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court

4

relied upon in terminating parental rights if the evidence also establishes that termination is in the child's best interest. *In re K.C.B.*, 280 S.W.3d at 894–95.

In reviewing for legal sufficiency, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344−45 (Tex. 2009). In reviewing for factual sufficiency, we give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). If, considering the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.*, 96 S.W.3d at 266.

The clear and convincing evidence standard does not mean the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ). The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* The factfinder also enjoys the right to resolve credibility issues and conflicts within the evidence and may freely choose to believe all, part, or none of the testimony espoused by any witness. *Id*. Where conflicting evidence is present, the factfinder's determination on such matters is generally regarded as conclusive. *In re B.R.*, 950 S.W.2d 113, 121 (Tex. App.—El Paso 1997, no writ).

The appellate court cannot weigh witness credibility issues that depend on demeanor and appearance as the witnesses are not present. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam). Even when credibility issues are reflected in the written transcript, the appellate court must defer to the factfinder's determinations, if those determinations are not themselves unreasonable. *Id.*

## APPLICABLE LAW

A trial court may order termination of a parent-child relationship if the court finds by clear and convincing evidence that a parent has knowingly placed or knowingly allowed a child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child and/or engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. *See* § 161.001(b)(1)(D), (E). Both subsections (D) and (E) require proof of endangerment. To "endanger" means to expose the child to loss or injury or to jeopardize the child's emotional or physical health. *Boyd,* 727 S.W.2d at 533. A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards. *J.S. v. Tex. Dep't of Family & Protective Servs.*, 511 S.W.3d 145, 159 (Tex. App.—El Paso 2014, no pet.). Endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, but it is not necessary that the conduct be directed at the child or that the child suffer injury. *In re N.K.*, 399 S.W.3d 322, 330 (Tex. App.—Amarillo 2013, no pet.).

While both subsections (D) and (E) focus on endangerment, they differ regarding the source of the physical or emotional endangerment to the child. *See In re B.S.T.*, 977 S.W.2d 481, 484 (Tex. App.—Houston [14th Dist.] 1998, no pet.). Subsection (D) requires a showing that the environment in which the child is placed endangered the child's physical or emotional health. *Doyle v. Tex. Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 394 (Tex. App.—El Paso 2000, pet. denied). Conduct of a parent or another person in the home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection (D). *In re W.S.*, 899 S.W.2d 772, 776 (Tex. App.—Fort Worth 1995, no pet.). " Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the 'conditions or surroundings' of the child's home" under subsection (D). *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g). The factfinder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent. *Id*. Thus, subsection (D) addresses the child's surroundings and environment rather than parental misconduct, which is the subject of subsection (E). *Doyle*, 16 S.W.3d at 394.

Under subsection (E), the cause of the danger to the child must be the parent's conduct alone, as evidenced not only by the parent's actions, but also by the parent's omission or failure to act. *In re M.J.M.L.*, 31 S.W.3d 347, 350–51 (Tex. App.—San Antonio 2000, pet. denied); *Doyle*, 16 S.W.3d at 395. To be relevant, the conduct does not have to have been directed at the child, nor must actual harm result to the child from the conduct. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 84

7

(Tex. App.—Dallas 1995, no writ). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re E.P.C.*, 381 S.W.3d 670, 683 (Tex. App.—Fort Worth 2012, no pet.). The specific danger to the child's well-being need not be established as an independent proposition but may be inferred from parental misconduct. *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.).

A determination of best interest necessitates a focus on the child, not the parent. *Id.* at 927. Appellate courts examine the entire record to decide what is in the best interest of the child. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam).

In assessing whether termination is in a child's best interest, the courts are guided by the non-exclusive list of factors in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[4] "[T]he State need not prove all of the factors as a condition precedent to parental termination, 'particularly if the evidence were undisputed that the parental relationship endangered the safety of the child.'" *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (quoting *In re C.H.*, 89 S.W.3d at 27). Evidence that supports one or more statutory grounds for termination may also constitute evidence

---

[4] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Id.*

illustrating that termination is in the child's best interest. *See In re E.C.R.*, 402 S.W.3d at 249. The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). We must also bear in mind that a child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

## ANALYSIS

The trial court terminated Mother's parental rights to I.G. on the grounds set out in subsections 161.001(b)(1)(D), (E), (P), and (Q). Only one predicate ground is required to support termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d at 362. Pursuant to the Texas Supreme Court opinion in *In re N.G.*, we review the trial court's findings under subsections 161.001(b)(1)(D) and (E) when raised on appeal, because a finding under those grounds may justify termination of parental rights to other children under subsection (M). *In re N.G.*, 577 S.W.3d 230, 235–37 (Tex. 2019) (per curiam); *see* § 161.001(b)(1)(M).

Sufficiency of the Evidence under Subsections 161.001(b)(1)(D) and (E)

In her first issue, Mother challenges the legal and factual sufficiency of the evidence to support the termination of her parental rights under subsections (D) and (E). Specifically, Mother argues that if I.G. was already placed with the paternal grandparents at the time of the removal, and not living at the "offending residence," the condition of the residence could not support termination under (D) or (E). Mother further argues that if

9

she did not have "care, custody, or control," of I.G. at the time of removal, any "alleged drug use or other bad conduct" on her part could not have endangered I.G. According to Mother, "[l]ogic would dictate you have to have possession of the child before the Department can take action to remove the child from your care and terminate your rights."

We first address Mother's argument that she did not have physical possession of I.G. at the time of the removal. Prior to the Department's involvement, Mother, as a parent of I.G., had certain legal rights and duties afforded to her as the parent of a child. These rights and duties include the right to have physical possession, direct the moral and religious training, and designate the residence of the child; the duty of care, control, protection, and reasonable discipline; and the duty to support the child, including providing the child with clothing, food, shelter, medical and dental care, and education. *See* § 151.001. In *In re A.A.*, the Texas Supreme Court explained that "[r]emoval is effectuated by a temporary court order that transfers not just the right to physical possession from a parent to [the Department] but an entire bundle of conservatorship rights from one or both parents" to the Department. *In re A.A.*, 670 S.W.3d 520, 567 (Tex. 2023). Consequently, even if Mother did not have physical possession of I.G. at the time of the removal, she had other specified legal rights to I.G. *See* § 151.001.

In this case, the Department took possession of I.G. under Family Code section 262.104, which authorizes possession without a court order if circumstances lead a person of ordinary prudence and caution to believe that the child faced "an immediate danger to [his] physical health or safety." § 262.104(a)(1). The next day, the Department filed a petition seeking conservatorship of I.G. and termination of Mother's parental rights. The petition was supported by a six-page affidavit from the Department investigator

10

recounting the circumstances necessitating I.G.'s removal. The affidavit described allegations of neglectful supervision of I.G. by Mother: I.G. was dirty, smelled "like cigarettes," and had unmet medical needs, and there were no "baby items" in the home for the infant. The affidavit also noted concerns that Mother is "abusing methamphetamine again," and drug paraphernalia was observed inside the home. The home was infested with roaches, "looked dirty," and had "trash and clothes all over the place." The affidavit documented Mother's extensive history with the Department involving three of I.G.'s siblings, who had been removed from her care and were living with the paternal and maternal grandparents.[5] After the petition and affidavit were filed, the trial court issued an emergency temporary order of protection that found, among other things, sufficient evidence that "continuation in the home of the Parents would be contrary to [I.G.'s] welfare,. . . [and] there is a continuing danger to the physical health or safety of [I.G.] if [he] is returned to the parent . . . who is presently entitled to possession . . . ." *See* § 262.102.

The emergency order does not just address physical possession. Chapter 262 equates it to "a temporary order for the conservatorship of a child under Section 105.001(a)(1) . . . ." § 262.102(a). In an emergency order issued under Chapter 262, the trial court appoints the Department as the temporary sole managing conservator of the child at issue and addresses what rights of conservatorship are transferred from the parent to the Department as a result of that appointment. § 153.371 (listing rights and duties that, "[u]nless limited by court order," attach to Department when appointed

---

[5] The affidavit shows what the trial court relied on in determining whether removal was justified. *See In re E.C.R.*, 402 S.W. 3d at 248.

managing conservator of child.). Thus, the emergency removal of I.G. encompassed not only Mother's possession, but conservatorship rights as well. Even if Mother did not have physical possession of I.G. at the time of the removal, she had the "right to have physical possession . . . and to designate the residence" of I.G. *See* § 151.001. The emergency nature of the circumstances made it necessary to enter a temporary order awarding "the rights and duties listed in § 153.371" to the Department, including the right of physical possession and to designate the residence of I.G., until an adversary hearing could be held. *See* § 262.201.[6]

In evaluating termination under subsection (D), we are to examine the time prior to the child's removal by the Department to determine whether the environment of the home posed a danger to his physical or emotional well-being. *See In re L.E.S.*, 471 S.W.3d 915, 926 (Tex. App.—Texarkana 2015, no pet.); *In re C.R.*, Nos. 07-20-00314-CV, 07-20-00316-CV, 2021 Tex. App. LEXIS 1286, at *6 (Tex. App.—Amarillo Feb. 23, 2021, pet. denied) (mem. op.). Under subsection (E), the conduct to be examined includes what the parent did both before and after the child was born. Because the evidence pertaining to subsections 161.001(b)(1)(D) and (E) is interrelated, we may conduct a consolidated review. *In re M.R.J.M.*, 280 S.W.3d at 503.

As detailed above, the trial court's grant of the Department's request for removal was based on the investigator's affidavit. It is clear from the affidavit that Mother and Father had been living in the "offending residence" with I.G. before the Department

---

[6] There is no indication in the record that Mother challenged the order by mandamus. *See Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex. 1991) (mandamus relief appropriate because trial court's temporary orders not subject to interlocutory appeal).

became involved. Moreover, the Department presented evidence that shortly after I.G.'s birth, it received a report citing concerns for the safety of I.G. because of the deplorable condition of the home and Mother's continuing use of methamphetamine. The home was littered with trash, infested with cockroaches, and lacked running water. Notably, there was an absence of basic baby-care items for a newborn, such as a crib, diapers, or baby wipes. After I.G. was removed from Mother's care, he required ECI services upon placement with the paternal grandparents. Exposing a child to unsanitary living conditions constitutes evidence that a parent has endangered the child. *In re M.C., D.C., and C.W.*, 917 S.W.2d 268, 270 (Tex. 1996) (per curiam).

The record further shows that during the pendency of this suit, Mother was incarcerated in the county jail and convicted of felony possession and distribution of methamphetamine, resulting in a 45-year prison sentence. The permanency specialist testified that Mother failed to provide any child support, exercised no visitation with I.G., and failed to demonstrate any stability. A parent's use of illegal substances may qualify as an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d at 345. This is because illegal drug use exposes a child to the possibility that his parent could be impaired or imprisoned, which would endanger the child's physical and emotional well-being. *In re M.C.*, 482 S.W.3d 675, 685 (Tex. App.—Texarkana 2016, pet. denied). "[I]ntentional criminal activity which exposed the parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well[-]being of the child." *In re A.W.T.*, 61 S.W.3d 87, 89 (Tex. App.—Amarillo 2001, no pet.) (per curiam); *In re A.F.,* No. 07-19-00435-CV, 2020 Tex. App. LEXIS 4152, at *17 (Tex. App.—Amarillo May 29, 2020, pet. denied) (mem. op.) (parent's failure to regularly participate in visitation

13

demonstrates lack of concern for child's well-being and can reasonably be found to be emotionally endangering to child's well-being).

Having examined the entire record, we find that the trial court could reasonably form a firm belief or conviction that Mother knowingly placed or knowingly allowed I.G. to remain in conditions or surroundings which endangered his physical or emotional well-being and engaged in conduct which endangered I.G.'s emotional and physical well-being. The same evidence is factually sufficient to support the trial court's affirmative finding. We overrule Mother's first issue. Having found that the evidence is legally and factually sufficient to support the trial court's finding under subsections 161.001(b)(1) (D) and (E), we need not address issues two and three challenging the trial court's findings under subsections 161.001(b)(1) (P) and (Q). *See In re A.V.*, 113 S.W.3d at 363; *see also* TEX. R. APP. P. 47.1 (allowing courts of appeals to limit discussions in opinions to issues necessary to disposition of appeal).

Best Interest

In her fourth issue, Mother challenges the factual and legal sufficiency of the evidence to support the best-interest finding made under section 161.001(b)(2).

At the time of the final hearing, I.G. was almost two years old and thus too young to express his desires. When a child is too young to express his desires, the factfinder may consider whether the child has bonded with the placement, is well-cared for by them, and has spent minimal time with a parent. *In re S.R.*, 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The evidence showed that I.G. had spent minimal time, a scarce three months, with Mother. Mother did not participate in any visitation with

I.G. after the Department began its investigation. The evidence showed that I.G. is strongly bonded with his grandparents and is thriving in their care. The trial court could have reasonably found that Mother's minimal contact with I.G. constituted evidence that Mother is incapable or unwilling to meet I.G.'s needs now and in the future. *See In re R.J.*, 568 S.W.3d 734, 752−53 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (minimal visitation relevant to multiple *Holley* factors including child's current and future physical and emotional needs and parent's ability to care for child).

Stability and permanence are paramount in the upbringing of children. *In re J.D.*, 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The factfinder may compare the parent's and the Department's plans for the child and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *Id.* at 119–20. At the time of the final hearing, Mother was serving a forty-five-year prison sentence with a parole eligibility date of August 10, 2029. Her continued incarceration subjects I.G. to a life of uncertainty and instability. A parent's imprisonment is a factor that may be considered in determining a child's best interest. *In re M.L.*, No. 07-20-00195-CV, 2020 Tex. App. LEXIS 9483, at *16 (Tex. App.—Amarillo Dec. 4, 2020, no pet.) (mem. op.). Conversely, the paternal grandparents have been providing a safe and stable environment for almost two years, along with the structure and consistency that I.G. needs. The paternal grandparents have actively sought to meet I.G.'s needs, including taking steps to remedy his developmental delays. The placement of I.G. with the paternal grandparents allows him to be raised with two older siblings, and the grandparents plan to adopt I.G. if parental rights are terminated.

We conclude that multiple *Holley* factors support the trial court's best-interest finding.  Considering all the evidence in the record, we hold that the evidence is legally and factually sufficient to establish a firm conviction in the mind of the trial court that termination of Mother's parental rights is in the best interest of I.G.  We overrule Mother's fourth issue challenging the best-interest determination.

## CONCLUSION

Having overruled the issues raised by Mother, we affirm the judgment of the trial court terminating Mother's parental rights to I.G.

Judy C. Parker
Chief Justice